STATE of Indiana, Indiana State Police
and Indiana Department of Highways,
Appellants, (Defendants Below)

v.

Richard H. RENDLEMAN, Appellee.
(Plaintiff Below)

No. 37S00–9202–CV–79.

Supreme Court of Indiana.

Nov. 23, 1992.

Linley E. Pearson, Atty. Gen., G. Richard
Potter, Deputy Atty. Gen., Indianapolis, for
appellant State of Ind., Indiana State Po-
lice, and Indiana Dept. of Highways.

Terrance L. Smith, Lawrence M. Hansen,
Smith & DeBonis, East Chicago, for appel-
lee Richard H. Rendleman.

KRAHULIK, Justice.

This case involves a challenge to the
constitutionality of the law enforcement
immunity section of the Indiana Tort
Claims Act, *Ind.Code Ann.* § 34–4–16.5–
3(7) (West Supp.1992).[1] The State of
Indiana, the Indiana State Police, and
Indiana Department of Highways (Defen-
dants below) (collectively "the State") ap-
peal from the trial court's order finding
Section 3(7) unconstitutional and granting
partial summary judgment in favor of Rich-
ard Rendleman (Plaintiff below). The
State brings this direct appeal pursuant to
Indiana Appellate Rule 4(A)(8). We find
the provision constitutional.

*Facts*

The following facts are undisputed for
purposes of this appeal. Rendleman filed
suit against the State for damages alleged-
ly sustained in a motor vehicle accident
involving him and an Indiana State Troop-
er, Arlie Brown, that occurred in the early
morning hours of August 18, 1988, on the

---

1. The relevant portion of the statute provides:
"A governmental entity or an employee acting
within the scope of the employee's employment
is not liable if a loss results from ... the adop-
tion and enforcement of or failure to adopt or
enforce a law, including rules and regulations,
unless the act of enforcement constitutes false
arrest or false imprisonment."

exit ramp leading from northbound Interstate–65 to Interstate–80/94. The State had placed an electronic flashing arrow board in the center of the ramp which directed traffic to the left of the arrow board around the scene of a prior accident. Trooper Brown observed Rendleman driving, apparently accelerating, around the right side of the arrow board onto the berm of the ramp. With his vehicle's emergency lights activated, Trooper Brown positioned his vehicle on the ramp in an effort to attract Rendleman's attention so Rendleman would stop his vehicle. Rendleman braked his vehicle, but was unable to stop it before it struck the Trooper's vehicle.

Rendleman filed suit seeking a recovery for his personal injuries and property damage. As an affirmative defense, the State asserted immunity from liability by virtue of Section 3(7). Rendleman then filed a motion for partial summary judgment contending that Section 3(7) violated Article 1 § 12 of the Indiana Constitution. Opining that Indiana's Constitution did not provide for sovereign immunity, the trial court described the doctrine as an archaic one "which no longer should be allowed to exist within the State." The trial court also noted that if immunity existed, then Rendleman would have to bear the entire loss because the State would be immune and Rendleman's insurance policy excluded uninsured motorist coverage for the negligence of immune governmental entities and their employees. The trial court determined that, as applied to Rendleman, Section 3(7) violated Article 1 § 12 because immunity would force him to be responsible for damages not of his own making. The trial court found no merit to the argument that without immunity, police officers might not act without hesitation in emergency situations or might not fully enforce the law. Rendleman's motion for partial summary judgment was granted. At Rendleman's request, this order was made final. This appeal under Indiana Appellate Rule 4(A)(8) followed.

### Standard of Review

When a statute is challenged on the basis that it is unconstitutional, our standard of review is well-settled. We determine if the case can be disposed of on non-constitutional grounds. *Reilly v. Robertson* (1977), 266 Ind. 29, 35, 360 N.E.2d 171, 174, *cert. den.* (1977) 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83. Here, the constitutional question is squarely presented and, therefore, we address it. The burden is on the party challenging the constitutionality of the statute, and all doubts are resolved against that party. *Sidle v. Majors* (1976), 264 Ind. 206, 209, 341 N.E.2d 763, 766. "[E]very statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary." *Id.* The legislature has wide latitude in determining public policy, and we do not substitute our belief as to the wisdom of a particular statute for those of the legislature. *Id.* "A statute is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies." *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 382, 404 N.E.2d 585, 591.

### Section 3(7) Is Constitutional

Article 1 § 12 of the Indiana Constitution provides:

All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

Rendleman argues that Section 3(7) of the Tort Claims Act violates the first sentence in this section because he is precluded from obtaining a remedy for his personal injury and property damage. This question has been previously decided against Rendleman. This Court did so summarily in *Seymour Nat'l. Bank v. State* (1981), Ind., 428 N.E.2d 203, 250, by noting that a similar challenge was advanced and rejected in *Krueger v. Bailey* (1980), Ind.App., 406 N.E.2d 665, 670–1. In *Krueger,* the Court of Appeals rejected the claim of unconstitutionality on the grounds that the Tort Claims Act had not changed the accessibility of the courts because it did little more

than codify the existing case law. *Id.* We also implicitly recognized the constitutionality of Section 3(7) recently in *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796. Today, we continue to recognize that Section 3(7) is constitutional.

Sovereign immunity developed in England as a common law doctrine founded on the substantive principle that "the king could do no wrong," and encompassing the procedural notion that the king, as a sovereign, was not subject to being sued in his own court. *Peavler v. Monroe Cty. Bd. Comm'rs.* (1988), Ind., 528 N.E.2d 40, 41, citing *Prosser and Keeton on Torts*, § 131 at 1033 (5th ed. 1984). The doctrine was carried over by courts in the United States, although "the explanation for the initial acceptance in the United States is obscure." *Peavler*, 528 N.E.2d at 41. Justice Holmes offered the following explanation in *Kawananakoa v. Polyblank:*

> Some doubts have been expressed as to the source of the immunity of a sovereign power from suit without its own permission, but the answer has been public property since before the day of Hobbes. A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends....
>
> As the ground is thus logical and practical, the doctrine is not confined to powers that are sovereign in the full sense of juridical theory, but naturally is extended to those that, in actual administration, originate and change at their will the law of contract and property, from which persons within the jurisdiction derive their rights. A suit presupposes that the defendants are subject to the law invoked. Of course it cannot be maintained unless they are so.

(1907), 205 U.S. 349, 353, 27 S.Ct. 526, 51 L.Ed. 834 (citations omitted).

Sovereign immunity has long been recognized in Indiana, *see e.g.,* *Perkins v. State* (1969), 252 Ind. 549, 552, 251 N.E.2d 30, 32, and *Pattison v. Shaw* (1855), 6 Ind. 377, 378, although the doctrine was rarely discussed in early cases. Prior to the adoption of Indiana's 1851 Constitution, the only recognized method for bringing an action against the State was to convince the legislature to pass an act authorizing a particular individual to bring suit. *See State v. Trustees of Vincennes Univ.* (1854), 5 Ind. 77. When Indiana's 1851 Constitution became effective, such special acts were forbidden. Instead, the legislature was permitted, but not required, to pass general legislation applicable to all within its scope permitting actions against the State to be maintained. *Ind. Const.* art. 4 § 24. The legislature took no action in this regard until 1889, when it passed legislation allowing individuals with contract claims to sue the State. *Carr v. State* (1891), 127 Ind. 204, 26 N.E. 778.

Neither the 1851 Constitution nor statutes existing at the time made direct reference to sovereign immunity. Thus, under the "hierarchy of laws" presently found in *Ind.Code* § 1–1–2–1, sovereign immunity, as part of the common law of England, would have been carried over in Indiana as part of its common law. In addition, this Court has previously suggested that the drafters of the 1851 Constitution implicitly recognized sovereign immunity as part of the common law of Indiana. *Perkins*, 252 Ind. at 551, 251 N.E.2d at 32. Certainly, Indiana courts recognized the existence of sovereign immunity earlier in this century. *State ex rel. Dept. of Conservation v. Pulaski Cir.Ct.* (1952), 231 Ind. 245, 249, 108 N.E.2d 185, 186; *City of Indpls. v. Indpls. Water Co.* (1916), 185 Ind. 277, 291, 113 N.E. 369, 373; *State v. Mutual Life Ins. Co.* (1910), 175 Ind. 59, 71, 93 N.E. 213, 218 (and cases cited therein). Such was the case despite the inclusion of Article 1 § 12 in the 1851 Constitution.

Rendleman correctly observes that in the years before Section 3(7) of the Tort Claims Act was enacted, Indiana courts began restricting application of sovereign immunity. We recently outlined this progress in *Tittle v. Mahan:*

> In *Brinkman v. City of Indpls.* (1967), 141 Ind.App. 662, 231 N.E.2d 169, the appellate court abandoned the govern-

mental/proprietary rule and abolished sovereign immunity from tort liability for municipalities, even in their governmental capacity. A year later, the appellate court in *Klepinger v. Bd. of Comm'rs.* (1968), 143 Ind.App. 178, 239 N.E.2d 160, applied the *Brinkman* rule to the counties of Indiana. The following year, this Court held that the State was exposed to liability for proprietary functions and reserved decision on whether immunity would still exist for the State for its governmental actions and functions. *Perkins v. State* (1969), 252 Ind. 549, 251 N.E.2d 30. Finally, in *Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733, this Court abolished the governmental/proprietary rule and held that sovereign immunity was no longer applicable to the State. In so holding, however, this Court recognized that the State would only be responsible in damages for a breach of duty owed to a private individual. To illustrate the retention of immunity against suits for breach of a public duty, this Court in *Campbell* cited *Simpson's Food Fair v. City of Evansville* (1971), 149 Ind.App. 387, 272 N.E.2d 871, in which the Court of Appeals had held that the City of Evansville was immune from liability for breach of its public duty to provide adequate police protection. Thus, at the time of the enactment of the Indiana Tort Claims Act, the common law was that governmental entities were not immune from tort claims resulting from a governmental entity employee's breach of a private duty owed to an individual, but governmental entities were immune from claims resulting from a breach of its public duties owed to all. 582 N.E.2d at 799. Nonetheless, sovereign immunity remained a viable doctrine for certain governmental activities. *Campbell v. State* (1972), 259 Ind. 55, 63, 284 N.E.2d 733, 737.

Rendleman concedes that under the 1816 Constitution and, initially, under the 1851 Constitution, Indiana recognized that the State was sovereign and could not be sued without its consent. However, he argues that after sovereign immunity was eroded by judicial decision and before Section 3(7) was enacted, Article 1 § 12 would have guaranteed his right to sue the State under the facts of this case. Thus, posits Rendleman, because the court's opinions limiting the scope of sovereign immunity contained no indication that the legislature could effectively override the judicial limitation by passing the Tort Claims Act, the legislature was without the authority to reinstate the doctrine.

■ It is well settled that, although courts interpret the common law, legislatures have the authority to modify or abrogate common law rights so long as such change does not interfere with constitutional rights. *Perkins*, 252 Ind. at 551, 251 N.E.2d at 34; *Dague v. Piper Aircraft* (1981), 275 Ind. 520, 529, 418 N.E.2d 207, 213; *Sidle v. Majors*, 264 Ind. at 209, 341 N.E.2d at 766; *Campbell v. State*, 259 Ind. at 62, 284 N.E.2d at 737. We do not perceive that any change to the common law occasioned by Section 3(7) runs afoul of any constitutional guarantee contained in Article 1 § 12. Indiana courts have uniformly held that, in cases involving injury to person or property, Article 1 § 12 does not prevent the legislature from modifying or restricting common law rights and remedies. *See, e.g., Jamerson v. Anderson Newspapers, Inc.* (1984), Ind.App., 469 N.E.2d 1243, 1250.

One such case is *Sidle v. Majors*, which concerned a constitutional challenge under Article 1 § 12 to the Indiana Guest Statute[2] on the grounds that it eliminated a remedy guaranteed by Indiana's Constitution. Quoting at length from a Delaware case which involved a guest statute nearly identical to Indiana's, this Court concluded (1) that Article 1 § 12 protected citizens against unreasonable and arbitrary deprivation of rights, but did not include a guarantee against legislative changes to the common law because no one has a vested interest in any rule of the common law, and (2) that Indiana's constitution does not forbid abolition of old rights recognized by the common law in order to attain permissible legislative objections. 264 Ind. at 222–24,

2. *Ind.Code* § 9–3–3–1 (1971) (now repealed).

341 N.E.2d at 773–74. This Court has also held that the shortening of the limitations period for filing product liability actions does not violate Article 1 § 12 because the cause of action had not accrued at the time the provision became effective and, therefore, no vested right was taken from the plaintiff. *Dague v. Piper Aircraft*, 275 Ind. 520, 418 N.E.2d 207. Similarly, this Court has held that the legislature's complete abolishment of the cause of action for alienation of affections did not violate rights granted under Article 1 § 12. *Pennington v. Stewart*, (1937), 212 Ind. 553, 10 N.E.2d 619. *See also Beecher v. White* (1983), Ind.App., 447 N.E.2d 622 (change in statute of limitations for deficiencies in improvements to real property does not violate Article 1 § 12). Moreover, this Court has recognized that "there may be a claim or demand without any right to sue for its recovery." *May v. State* (1892), 133 Ind. 567, 570, 33 N.E. 352, 353. The reasoning of these cases convinces us that Rendleman was not deprived of any right granted him under Article 1 § 12.

In tort cases, the source of authority or lack thereof to sue the State originally arose from rights at common law, not from rights contained in the Constitution. Thus, it is within the legislature's authority to expand or restrict the scope of sovereign immunity through the Tort Claims Act. That Section 3(7) may result in Rendleman bearing the full economic burden of his injuries and damages without the ability to insure himself against such losses, is a matter of policy for the legislature, not this Court, to address. Accordingly, we declare that Section 3(7) was a constitutional exercise of legislative authority.

## CONCLUSION

Accordingly, we reverse the trial court's entry of partial summary judgment, and remand this matter for further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.