## FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**ANTHONY W. PATTERSON**
Lebanon, Indiana

**ROBERT S. PECK**
Washington, D.C.

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**THOMAS M. FISHER**
Solicitor General

**HEATHER HAGAN MCVEIGH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| VanDam Estate v. Mid-America Sound, et al., | ) | *Consolidated* |
| 49D02-1111-CT-044823-001, | ) | |
| Urschel v. Mid-America Sound, et al., | ) | |
| 49D02-1111-CT-044823-002, | ) | |
| Brennon v. Mid-America Sound, et al., | ) | |
| 49D02-1111-CT-044823-003, | ) | No. 49A04-1405-CT-207 |
| Porter v. Mid-America Sound, et al., | ) | |
| 49D02-1111-CT-044823-004, | ) | |
| Santiago Estate v. Mid-America Sound, et al., | ) | |
| 49D02-1111-CT-044823-005, | ) | |
| BigJohny Estate v. Mid-America Sound, et al., | ) | |
| 49D02-1111-CT-044823-006, | ) | |
| Vinnegar v. Mid-America Sound, et al., | ) | |
| 49D02-1111-CT-044823-007, | ) | |
| Indiana Farmers v. Dave Lucas Ent., et al., | ) | |
| 49D02-1111-CT-044823-008. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-1111-CT-44823

**January 14, 2015**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

Jordyn Polet was injured when the stage collapsed at a concert at the Indiana State Fair. Polet declined the State's settlement offer, and the State distributed, to the claimants who were willing to settle, all the money available under the Indiana Tort Claims Act (ITCA) cap of five million dollars. After her parents sued the State and others, the State asserted, as an affirmative defense, that the ITCA made it immune to Polet's claim.

Polet moved for partial summary judgment on the State's affirmative defense it was immune under the ITCA. The trial court denied her motion. Polet argues the limits on the State's aggregate tort liability, as applied to her, violate the Indiana Constitution's open courts and equal privileges guarantees. We affirm.

### FACTS AND PROCEDURAL HISTORY[1]

Before a concert at the Indiana State Fair in 2011, there was severe weather and the stage roof collapsed, causing a number of deaths and injuries. Some of the victims sued the State of Indiana, the Indiana State Fair Commission, the Indiana State Police (collectively, "the State"), and various private entities. Ind. Code § 34-13-3-4 provides that when a governmental entity or employee is not immune from liability, the combined aggregate liability of all governmental entities and of all public employees is capped at seven hundred thousand dollars for injury to or death of one person in any one occurrence

---

[1] We heard oral argument December 15, 2014 in Indianapolis. We commend counsel on the quality of their advocacy.

and at five million dollars for injury to or death of all persons in that occurrence.

The five million dollar limit was made available to settle the victims' claims. Polet was offered $1690.75, which she declined. She was the only claimant who did not settle. The other sixty-four claimants accepted the State's settlement offers, and those settlements exhausted the five million dollar cap.

The following year the legislature made available an additional six million dollars to compensate the victims, but it specified the money was available only to victims who had already released the State from liability: "To receive a distribution under this chapter for an occurrence, an eligible person must have already released all governmental entities and public employees from any liability for loss resulting from the occurrence." Ind. Code § 34-13-8-6. Polet was therefore not eligible for any of that money either.

The trial court determined the statutory liability cap did not violate Polet's constitutional rights, and it denied her motion for summary judgment.

## DISCUSSION AND DECISION

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). On review of a summary judgment, we face the same issues that were before the trial court and follow the same process. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind. 2001). The party appealing from a summary judgment has the burden of persuading us the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure

3

a party was not improperly prevented from having its day in court. *Id*. On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Id*. at 909. All facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id*. If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id*.

When a statute is challenged as violating the Indiana Constitution, our standard of review is well settled. A statute is presumed constitutional until the party challenging its constitutionality clearly overcomes the presumption by a contrary showing. *Sims v. United States Fid. & Guar. Co.*, 782 N.E.2d 345, 349 (Ind. 2003). If a statute has two reasonable interpretations, one constitutional and the other not, we will choose the interpretation that will uphold the constitutionality of the statute. *Id.* We do not presume the General Assembly violated the constitution unless the unambiguous language of the statute so mandates. *Id.* A reviewing court should nullify a statute on constitutional grounds only where such result is clearly rational and necessary. *Id.*

1.     Open Courts

Ind. Const. art. I, § 12 provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." The application of the ITCA liability cap to Polet did not violate the open courts clause.

There is no right under the open courts clause to any particular cause of action and

the legislature may create, modify, or abolish a particular cause of action. *Smith v. Indiana Dep't of Correction*, 883 N.E.2d 802, 810 (Ind. 2008). But to the extent there is an existing cause of action, the courts must be open to entertain it. *Id*. The constitution does not preclude the General Assembly from modifying or eliminating a common law tort, but Section 12 requires legislation that deprives a person of a complete tort remedy must be a rational means to achieve a legitimate legislative goal. *McIntosh v. Melroe Co., a Div. of Clark Equip. Co.*, 729 N.E.2d 972, 979 (Ind. 2000). The ITCA aggregate liability cap is a rational means to achieve a legitimate legislative goal, and we cannot find its application to Polet unconstitutional.

Polet characterizes herself as "a claimant with a valid, accrued cause of action authorized by statute," but who "has no practical means of asserting it" just because she declined a settlement offer she felt was inadequate and because the State paid the maximum amount of its liability to others. (Plaintiff-Appellant's Opening Br. (hereinafter "Polet Br.") at 12.)

We note initially the aggregate liability caps in the ITCA have been found constitutional: "The legislative purpose behind the liability limitations was to protect the financial integrity of a governmental entity, and this statutory provision cannot be deemed repugnant to the constitution merely because it restricts the amount of damages available to the Class." *In re Train Collision at Gary, Ind. on Jan. 18, 1993*, 654 N.E.2d 1137, 1149 (Ind. Ct. App. 1995), *reh'g denied, trans. denied*.

"Article I, Section 12 does not specify any particular remedy for any particular

5

wrong.  Rather, it leaves the definition of wrongs and the specification of remedies to the legislature and the common law." *Cantrell v. Morris*, 849 N.E.2d 488, 499 (Ind. 2006).  It is within the legislature's authority to expand or restrict the scope of sovereign immunity through the ITCA.  *State v. Rendleman*, 603 N.E.2d 1333, 1337 (Ind. 1992).  The *Rendleman* Court held the law enforcement immunity section of the Act was a constitutional exercise of legislative authority.  *Id.*  That the immunity section "may result in Rendleman bearing the full economic burden of his injuries and damages without the ability to insure himself against such losses, is a matter of policy for the legislature, not this Court, to address."  *Id.* at 1333.

Because the open courts clause does not prevent the legislature from modifying or restricting common-law rights or remedies, the State argues Polet has "no protectable interest" in a tort claim against the State.  (State's Br. at 12.)  The State asserts Polet's "right to bring her claim is subject to the Act's restrictions," including the liability cap.  (*Id.* at 15.)  The State notes Polet was not precluded from pursuing a claim; in fact, she did and the State offered her a settlement.  It was not lack of access to the courts that prevented Polet's recovery – it was the statutory limit on the State's liability.

Even if the effect of the application of the ITCA's aggregate cap left Polet "no practical means of asserting" her tort claim, the restriction on Polet's right to bring her claim did not violate the open courts clause.  There is a right of access to the courts, and the legislature cannot unreasonably deny citizens the right to exercise this right.  *Martin v. Richey*, 711 N.E.2d 1273, 1283 (Ind. 1999).  Nor can the legislature deprive a person of a

6

complete tort remedy arbitrarily and unreasonably, consistent with the protections Section 12 affords.  Legislation that restricts such a right must be a rational means to achieve a legitimate legislative goal.  *Id.  And see McIntosh v. Melroe Co., a Div. of Clark Equip. Co.*, 729 N.E.2d 972, 979-80 (Ind. 2000) (Section 12 requires that legislation that deprives a person of a complete tort remedy must be a rational means to achieve a legitimate legislative goal).

One of the main concerns the ITCA was intended to address was protection of the public treasury from a multitude of tort lawsuits.  *Harrison v. Veolia Water Indianapolis, LLC*, 929 N.E.2d 247, 253 (Ind. Ct. App. 2010).  *See also* Jack M. Sabatino, *Privatization and Punitives: Should Government Contractors Share the Sovereign's Immunities from Exemplary Damages?,* 58 Ohio St. L.J. 175, 199 (1997) (noting the concept of sovereign immunity "may be substantially predicated on protecting the public treasury, and thereby the taxpayers at large, from what could be enormous monetary liabilities if government were held legally accountable in civil litigation in exactly the same fashion as private entities and persons").  The aggregate liability cap is a rational means to achieve the legitimate legislative goal of protecting the public treasury.  *See Thompson v. State*, 425 N.E.2d 167, 176 (Ind. Ct. App. 1981) (there is a rational basis to the legislature's attempt to protect the public treasury from unlimited liability in tort).

2.     Equal Privileges

Ind. Const. Art. I, § 23 provides "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not

7

equally belong to all citizens." Where a statute grants unequal privileges or immunities to different classes of persons, proper constitutional inquiry under Section 23 requires consideration of two factors. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics that distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.[2] *Collins*, 644 N.E.2d at 78-79. The test for a rational relationship for legislative classifications under Article 1, § 23 is very similar to the requirement of rationality under Article 1, § 12 discussed above. *Morrison v. Sadler*, 821 N.E.2d 15, 35 (Ind. Ct. App. 2005).

The protections assured by Section 23 apply fully, equally, and without diminution to prohibit any and all improper grants of unequal privileges or immunities, including not only those grants involving suspect classes or impinging upon fundamental rights but other such grants as well. *Collins*, 644 N.E.2d at 80. In determining whether a statute violates Section 23, we exercise substantial deference to legislative discretion. *Id*.

The considerations embodied in the first factor focus on the nature of the classifications of citizens on which the legislature is basing its disparate treatment. Where the legislature singles out one person or class of persons to receive a privilege or immunity not equally provided to others, such classification must be based on distinctive, inherent characteristics that rationally distinguish the unequally treated class, and the disparate

---

[2] As we find no disparate treatment that raises a section 23 concern, we do not address whether any "preferential treatment" was "uniformly applicable and equally available to all persons similarly situated."

treatment accorded by the legislation must be reasonably related to such distinguishing characteristics. *Id.* at 78-79.

Legislative classification becomes a judicial question when the lines drawn appear arbitrary or manifestly unreasonable. *Id.* If the classification is based on substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature; nor will we inquire into the legislative motives prompting such classification. *Id.*

Polet characterizes the "class of citizens" she is in as persons who are victims of the "[S]tate's negligence that results in injuries to multiple persons" as opposed to "persons who are the sole victims of the [S]tate's negligent acts." (Polet Br. at 13.) When there are many victims, none can be eligible for damages at the individual cap amount of seven hundred thousand dollars. The disparate treatment between a small group of injured persons and a large group violates the first prong of the *Collins* analysis, Polet says, because it is not reasonably related to inherent characteristics that distinguish the unequally treated classes. She asserts no such inherent characteristics distinguish claimants injured by themselves from claimants injured along with numerous other persons, nor is there anything that distinguishes Polet's claim from that of anyone else who was injured in the stage collapse "that would justify complete foreclosure of her claim." (Polet Br. at 15.) "It is the claim, not any innate characteristic of the person, that defines the class." *McIntosh*, 729 N.E.2d at 981.

We note initially that nothing in the ITCA classifies claimants or "promises

recovery to some while denying it to others." (State's Br. at 20.) The State characterizes Polet's proposed classification as just "an incidental effect of the Act," which treats all claimants the same, not differently. *Id*. at 21. In limiting the amount recoverable by individual and by incident, the ITCA applies equally to all claims and all incidents, and both categories Polet defines are subject to the individual and aggregate caps. We therefore cannot find there is a classification in the case before us that implicates the equal privileges clause.

We acknowledge that in *Estate of McCall v. United States*, 134 So. 3d 894 (Fla. 2014), the Florida Supreme Court found unconstitutional the classification of tort claimants when there are multiple victims rather than a single victim. Even if we were to recognize such a classification in Indiana, its application would not violate the Indiana equal privileges clause.

Florida's statutory cap on wrongful death noneconomic damages in medical negligence actions provided for a limit of five hundred thousand dollars per claimant. "The total noneconomic damages recoverable by all claimants from all practitioner defendants under this subsection shall not exceed $1 million in the aggregate." Fla. Stat § 766.118(2).

The *McCall* Court determined the statutory cap on wrongful death noneconomic damages imposed "unfair and illogical" burdens on injured parties when an act of medical negligence gave rise to multiple claimants. *Id*. at 901. That type of classification was "purely arbitrary and unrelated to a true state interest." *Id*. In such circumstances, medical malpractice claimants do not receive the same rights to full compensation because of

10

arbitrarily diminished compensation for legally cognizable claims:

> [T]he death of a wife who leaves only a surviving spouse to claim the $250,000 is not equal to the death of a wife who leaves a surviving spouse and four minor children, resulting in five claimants to divide $250,000. *We fail to see how this classification bears any rational relationship to the Legislature's stated goal of alleviating the financial crisis in the medical liability industry.* Such a categorization offends the fundamental notion of equal justice under the law and can only be described as purely arbitrary and unrelated to any state interest. Further, the statutory cap on wrongful death noneconomic damages does not bear a rational relationship to the stated purpose that the cap is purported to address, the alleged medical malpractice insurance crisis in Florida.

*Id.* (quoting *St. Mary's Hospital, Inc. v. Phillipe*, 769 So.2d 961, 972 (Fla. 2000), *reh'g denied*) (emphasis supplied by the *McCall* Court).

The dual-cap system in Indiana has the same effect, Polet argues, because it is inherently discriminatory when applied without regard to the number of claimants who are entitled to recover. No inherent characteristic of the class justifies the differential treatment of identical claims. The State's consent to be sued, as represented by the ITCA, therefore is not uniformly applied and available to all qualified claimants, as required by *Collins*.

*McCall* is distinguishable. There, the distinction between single claimant and multiple-claimant classes had no rational relationship to the legislature's goal of alleviating a purported crisis in the medical liability insurance industry. The aggregate cap in the ITCA, by contrast, does bear a rational relationship to the legislative goal of protecting the public treasury against unlimited tort liability. The ITCA's aggregate cap does not classify tort victims, but only occurrences, and the legislature may properly decide that occurrences that generate over five million dollars in liability place too great a burden on the treasury.

11

**CONCLUSION**

The application of the ITCA aggregate liability cap to Polet did not violate the open courts clause of the Indiana constitution, nor was Polet in a class of persons treated unequally compared to other claimants seeking relief under the ITCA. We accordingly affirm.

Affirmed.

VAIDIK, C.J., and FRIEDLANDER, J., concur.