

FILED

Dec 04 2017, 6:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary S. Kester
Charitable Allies, Inc.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Scott L. Bunnell
Joshua A. Atkinson
Michelle K. Floyd
Hunt Suedhoff Kalamaros LLP
Fort Wayne, Indiana
Attorneys for Patricia Roe

Linda L. Vitone
Kimberly E. Howard
Smith Fisher Maas Howard & Lloyd, PC
Indianapolis, Indiana
Attorneys for Aliza Anderson, Lorri
Bryant, Dr. Cathi Cornelius, Lauren
Peterson, Lauren Wright, and Robert
Dotson

John W. Mervilde
Rick D. Meils
Meils Thompson Dietz & Berish
Indianapolis, Indiana
Attorneys for Marshawn Wolley

Jeffrey D. Hawkins
Mark D. Gerth
Adam S. Ira
Kightlinger & Gray, LLP
Indianapolis, Indiana
Attorneys for Chi Blackburn, Brooke
Dunn, Frances L. Hudson, Tanjla
Lawrence, Frances Malone, Latika
Warthaw, Flanner House Elementary
School, Inc.

Curtis T. Hill, Jr.
Attorney General of Indiana
Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana
Attorneys for the State of Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Flanner House of Indianapolis, Inc.,

*Appellant-Plaintiff,*

v.

Flanner House Elementary School, Inc., Aliza Anderson, Chi Blackburn, Lorri Bryant, Dr. Cathi Cornelius, Robert Dotson, Brooke Dunn, Frances L. Hudson, Tanjla Lawrence, Frances Malone, Lauren Peterson, Patricia Roe, Latika Warthaw, Marshawn Wolley, Lauren Wright, and Liberty Mutual Insurance Group,

*Appellees-Defendants,*

and

State of Indiana,

*Appellee-Intervenor.*

December 4, 2017

Court of Appeals Case No. 49A02-1612-PL-2942

Appeal from the Marion Superior Court.
The Honorable John F. Hanley, Judge.
Trial Court Cause No. 49D11-1508-PL-26396

**Friedlander, Senior Judge**

[1] Flanner House of Indianapolis, Inc. (Flanner House) appeals the trial court's entry of summary judgment in favor of Flanner House Elementary School, Inc. (Flanner School, Inc.) and its individual directors and officers (collectively "Appellees").[1] We affirm.

[2] Flanner House presents three issues for our review, which we restate as:

> 1. Whether the trial court erred in granting summary judgment in favor of the Appellees on the issue of compliance with the notice requirement of the Indiana Tort Claims Act (the Act).
>
> 2. Whether application of the Act to charter schools and their organizers violates the equal privileges and immunities clause of the Indiana Constitution.
>
> 3. Whether application of the Act to charter schools and their organizers violates the open courts clause of the Indiana Constitution.

[3] Flanner School, Inc. is a nonprofit Indiana corporation that was established in early 2002. On February 27, 2002, Flanner School, Inc. entered into a charter school agreement with the Mayor of Indianapolis to establish a charter school named Flanner House Elementary School (Elementary School). Flanner School, Inc. operated the Elementary School as a charter school under this agreement until its charter was revoked on September 11, 2014. During that

---

[1] Flanner House filed a motion to dismiss Chi Blackburn, Brooke Dunn, and Frances Malone, which the trial court granted on November 21, 2016. On January 24, 2017, Tanjla Lawrence was also dismissed from the case. Finally, on February 6, 2017, the trial court granted Flanner House and Liberty Mutual Insurance Group's stipulation of dismissal of Liberty Mutual from this cause.

time, Flanner School, Inc. leased its school building from Flanner House, a separate nonprofit Indiana corporation.

[4] In August 2015, Flanner House sued Flanner School, Inc. for breach of contract, sued the Appellees for negligence and fraud, and sued Liberty Mutual Insurance Group for bad faith. In its complaint, Flanner House alleged that Flanner School, Inc. breached the lease by failing to pay monthly rent and that the Appellees owed a duty to Flanner House, which they recklessly breached by failing to hold regular meetings, operating the school without adequate oversight, and failing to adequately oversee the financial and educational activities of the school. To support its claims of fraud, Flanner House also claimed that the Appellees made false statements that caused it harm. In November 2016, on Flanner House's motion, the trial court dismissed all of the fraud claims.

[5] From July through October 2016, the Appellees, some individually and some jointly, filed motions for summary judgment. All of the Appellees argued that Flanner House had not provided them with notice under the Act, and Appellee Patricia Roe additionally argued in the alternative that no duty was owed to Flanner House. Flanner House responded that the Appellees were not entitled to notice under the Act and alleged that extending the protections of the Act to the Appellees violates the Indiana Constitution. Having received notice from the court that the constitutionality of the Act was being challenged in this action, the State filed motions to intervene and to bifurcate the constitutional issues, both of which were granted. After hearing argument on the motions for

summary judgment, the trial court entered final judgment for the Appellees. This appeal followed.

[6] On appeal from a summary judgment, we apply the same standard of review as the trial court: summary judgment is appropriate only where the designated evidentiary matter shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421 (Ind. 2015); *see also* Ind. Trial Rule 56(C). Where the challenge to the trial court's summary judgment ruling presents only legal issues, not factual ones, we review the issues de novo. *Ballard v. Lewis*, 8 N.E.3d 190 (Ind. 2014).

## 1. "Charter School"

[7] Flanner House asserts the trial court erred by granting summary judgment for the Appellees on the issue of its compliance with the tort claim notice requirement. The Act governs civil lawsuits against governmental entities and their employees. Ind. Code §§ 34-13-3-1 (1998), -3 (2016).[2] Under the dictates of the Act, a charter school is a governmental entity. Ind. Code § 34-6-2-49(a) (2013). The Act provides that a claim against a governmental entity is barred unless notice is filed with the governing body of the governmental entity within 180 days after a loss occurs. Ind. Code § 34-13-3-8 (1998).

---

[2] There being no disagreement about the particular version of a statute applicable to this case, we cite the current version for the sake of efficiency and ease of the reader, unless otherwise noted.

[8] In this litigation, Flanner House did not provide notice of its claims to the Appellees as required by the Act. The thrust of Flanner House's argument is that Flanner School, Inc. is not a "charter school," as that term is used in the Act, and therefore is not entitled to the notice required under the Act. Although Flanner House acknowledges that the Elementary School is a charter school, it contends Flanner School, Inc. is not a charter school but is instead an organizer of a charter school and therefore a distinct entity from the charter school itself. Accordingly, Flanner House argues that Flanner School, Inc. is not entitled to the notice provisions of the Act because it is not a governmental entity under the Act. The question before us then is whether our legislature intended to include the nonprofit organizer of a charter school in the meaning of that term for purposes of the Act.

[9] A question of statutory interpretation is a matter of law, and we are neither bound by, nor are we required to give deference to, the trial court's interpretation. *Perry-Worth Concerned Citizens v. Bd. of Comm'rs of Boone Cnty.*, 723 N.E.2d 457 (Ind. Ct. App. 2000), *trans. denied*. Accordingly, our review is de novo. *Ballard*, 8 N.E.3d 190. When interpreting a statute, we look to the express language of the statute and the rules of statutory construction. *Ind. State Teachers Ass'n v. Bd. of Sch. Comm'rs of City of Indianapolis*, 693 N.E.2d 972 (Ind. Ct. App. 1998). This court is required to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity and to advance public convenience. *Id*. In so doing, we must be aware of the purpose of the statute, as well as the effect of such an interpretation. *Id*. We read the

individual sections of an act as a whole and strive to give effect to all of its provisions such that no part of the act is held meaningless if it can be reconciled with the rest of the statute. *Citizens Action Coal. of Ind., Inc. v. Ind. Statewide Ass'n of Rural Elec. Coops., Inc.*, 693 N.E.2d 1324 (Ind. Ct. App. 1998). We presume that our legislature intended its language to be applied in a logical manner consistent with the underlying goals and policy of the statute. *Id.* Moreover, in this case we are mindful that because the Act is in derogation of the common law, it must be strictly construed against limitations on a claimant's right to bring suit. *Simpson v. OP Prop. Mgmt., LLC*, 939 N.E.2d 1098 (Ind. Ct. App. 2010).

[10] A charter school is a public elementary school that is established by and operates under a charter. Ind. Code § 20-24-1-4 (2005). A charter is a contract between an organizer (a nonprofit corporation and its independent board) and an authorizer (the executive of a consolidated city) for the establishment of a charter school. Ind. Code §§ 20-24-1-3 (2013), -7 (2017), and -2.5(3) (2015). In the present case, Flanner School, Inc. is the organizer, and the Mayor of Indianapolis is the authorizer.

[11] To establish a charter school, an organizer may submit to the authorizer a proposal, which is a detailed implementation plan that includes both governance and educational matters, all of which are the ultimate responsibility of the organizer. The proposal must contain at least the following information:

(1) identification of the organizer,

(2) a description of the organizer's organizational structure and governance plan,

(3) the following information for the proposed charter school:

    (a) name,

    (b) purposes,

    (c) governance structure,

    (d) management structure,

    (e) educational mission goals,

    (f) curriculum and instructional methods,

    (g) methods of pupil assessment,

    (h) admission policy and criteria,

    (i) school calendar,

    (j) age or grade range of students to be enrolled,

    (k) description of staff responsibilities,

    (l) description of the physical plant,

    (m) budget and financial plans,

    (n) personnel plan, including methods for selection, retention, and compensation of employees,

    (o) transportation plan,

    (p) discipline program,

    (q) plan for compliance with any applicable desegregation order,

    (r) date when the charter school is expected to:

        (i) begin school operations, and

        (ii) have students attending the charter school,

(s) arrangement for providing teachers and other staff with health insurance, retirement benefits, liability insurance, and other benefits, and

(4) the manner in which the authorizer must conduct an annual audit of the program operations of the charter school.

*See* Ind. Code § 20-24-3-4 (2017).

[12] The authorizer reviews and evaluates the application under criteria consistent with nationally recognized principles and informs the organizer whether the proposal is accepted or rejected. Ind. Code §§ 20-24-3-4.5 (2015) and -9 (2017). If the proposal is rejected, the organizer may amend and resubmit the proposal to the same authorizer or submit a proposal to another authorizer. Ind. Code § 20-24-3-11 (2017). If the proposal or amended proposal is accepted, the organizer is granted a charter by the authorizer, and the organizer may begin operation of the charter school in accordance with the operating plan as submitted in its proposal as well as the rights and obligations set forth in its charter. Ind. Code § 20-24-3-1 (2013), *see also* Ind. Code § 20-24-4-1 (2017) (setting forth charter requirements).

[13] The organizer's duties do not end when the charter is signed and the charter school is operational. Once established, each charter school must set annual performance targets designed to help the school meet applicable federal, state, and authorizer expectations. Ind. Code § 20-24-4-1(b). Moreover, at the time period covered by Flanner House's complaint, the organizer was required each year to submit to the department of education information concerning: (1) the number of students enrolled in the charter school, (2) the name and address of each student, (3) the name of the school corporation in which the student has

legal settlement, (4) the name of the school corporation, if any, that the student attended during the immediately preceding school year, and (5) the grade level in which the student will enroll in the charter school. Ind. Code § 20-24-7-2 (2009) and (2013).

[14] Additionally, the organizer is the fiscal agent for the charter school and has exclusive control of the financial matters of the school and of funds received by the school. Ind. Code § 20-24-7-1 (2015). On behalf of a charter school, an organizer may apply for and accept independent financial grants and funds from sources other than the department of education. Further, an organizer must make all applications, enter into all contracts, and sign all documents necessary for aid, money, or property received by the charter school from the federal government. Ind. Code § 20-24-7-5 (2005). An organizer also may be requested at any time to provide to the authorizer the financial reports of the school. Ind. Code § 20-24-7-8 (2013).

[15] Moreover, the organizer is required to publish an annual performance report that provides information regarding student enrollment, graduation rate, attendance rate, test scores, average class size, the school's performance category, number and percentage of students in special programs, advanced placement, course completion, percentage of graduates considered college and career ready, school safety, financial information, teacher certification/licensing, percentage of grade 3 students reading at grade 3 level, number of students expelled, chronic absenteeism, habitual truancy, number of students who have dropped out of school, number of in and out of school

suspensions, number of student work permits revoked, and number of students receiving an international baccalaureate diploma. Ind. Code §§ 20-24-9-6 (2005), 20-20-8-8 (2017).

[16] If an organizer is notified by the authorizer that it is failing to comply with the conditions of the charter, applicable federal and state laws, or generally accepted fiscal management and government accounting principles, or if the school is failing to meet the educational goals set out in the charter, it must remedy the deficiencies or face revocation of the school's charter. Ind. Code § 20-24-9-4 (2017). The authorizer also has the authority to decline to renew a school's charter. In both instances, the organizer is allowed representation by counsel and time to prepare a response, as well as an opportunity to submit documents and testimony in support of continuation of the charter school. Ind. Code § 20-24-4-3 (2013). In the event of a school closing, the organizer must ensure the transfer of all school records, including student records, to the department of education. Ind. Code § 20-24-9-4.6 (2017).

[17] As demonstrated by the statutes, the organizer determines the organization and management of the school, receives the charter for the charter school, is responsible for the implementation of the charter, is accountable for the financial and academic viability of the school, and insures compliance with federal and state laws and authorizer expectations. A charter school cannot exist without an organizer, and the organizer is required to have nonprofit status. Based upon our review of the relationship, responsibilities, duties, and authority of a charter school organizer as set out in these statutes, we conclude

that an organizer of a charter school is not an entity separate from the charter school. Rather, an organizer and a charter school *jointly are* the charter school.

[18] In making this determination, we note the similarity of charter school organizers to public school corporations, and we recognize that organizers are indeed considered school corporations for certain state and federal funding opportunities. Ind. Code § 20-24-7-15 (2016). Public school corporations are political subdivisions under the Act with governing bodies (boards) that administer the affairs of the school corporations. Ind. Code § 34-6-2-110(9) (2007); Ind. Code § 20-26-2-2 (2005). Like charter school organizers, public school corporations may take charge of, manage, and conduct the educational affairs of the school corporation; employ certain staff; make budgets and appropriate and disburse funds; make all applications, enter into contracts, and sign all documents necessary for the receipt of aid, money, or property from the state, the federal government, or any other source. Ind. Code § 20-26-5-4 (2016). Additionally, public school corporations are required by Indiana Code section 20-20-8-3 (2015) to publish an annual performance report.

[19] Thus, we conclude that an organizer of a charter school is included in the term "charter school" for purposes of Ind. Code § 34-6-2-49(a). Accordingly, Flanner School, Inc. was entitled to notice of Flanner House's claims as

provided for in the Act, and the trial court properly granted summary judgment for Flanner School, Inc.[3]

[20] Understanding that Flanner House gave no notice of its tort claim and having determined that a charter school organizer is a "charter school" and entitled to notice of Flanner House's tort claim, we turn to the charter school directors and officers named by Flanner House as additional defendants. The notice requirement of the Act applies not only to suits against governmental entities but also to suits against employees of governmental entities. Ind. Code § 34-13-3-3; *Davidson v. Perron*, 716 N.E.2d 29 (Ind. Ct. App. 1999), *trans. denied*.

[21] We further note that the Act prohibits suits against individual board members concerning acts taken by the board where the member was acting within the scope of the member's employment. Ind. Code § 34-13-3-5 (2003). A suit filed against a board member individually must allege, including a reasonable factual basis, an act or omission by the member that is criminal, clearly outside the scope of the employee's employment, malicious, willful and wanton, or calculated to benefit the employee personally. *Id.* Here, Flanner House named the directors and officers individually concerning their actions taken as a whole board. There were no allegations of individual board members acting outside

---

[3] In the Statement of the Facts section of its brief to this Court, Flanner House briefly mentions that Appellee Wolley had notice of its claim. *See* Appellant's Br. p. 16. To the extent that this could be considered an argument of substantial compliance with the notice provision under the Act, Flanner House's claim is waived for failure to present cogent argument and citation to authority. *See Thacker v. Wentzel*, 797 N.E.2d 342 (Ind. Ct. App. 2003) (stating this Court will not consider appellant's assertion on appeal when appellant fails to develop argument and present cogent argument supported by authority); *see* Ind. Appellate Rule 46(A)(8)(a).

the scope of their employment or in an improper manner. Thus, entry of summary judgment for the directors and officers was also proper based upon Flanner House's failure to provide a notice of tort claim.

## 2. Equal Privileges and Immunities Clause

By granting summary judgment for the Appellees, the trial court implicitly found constitutional the provisions of the Act relating to charter schools. Flanner House claims that application of the Act to include not only charter schools but also their organizers violates two provisions of the Indiana Constitution.

When a statute is challenged as violating the Indiana Constitution, our standard of review is well settled. "A statute is presumed constitutional until the party challenging its constitutionality clearly overcomes the presumption by a contrary showing." *VanDam Estate v. Mid-America Sound*, 25 N.E.3d 165, 168 (Ind. Ct. App. 2015), *trans. denied*. If there are two reasonable interpretations of the statute, one constitutional and the other not, we will choose the interpretation that will uphold the constitutionality of the statute. *Sims v. U.S. Fid. & Guar. Co.*, 782 N.E.2d 345 (Ind. 2003). We do not presume the General Assembly violated the constitution unless we are compelled to do so by the unambiguous language of the statute. *VanDam Estate*, 25 N.E.3d 165. This Court should nullify a statute on constitutional grounds only where such result is clearly rational and necessary. *Id.*

[24] First, Flanner House asserts that extending the notice and governmental immunity provisions of the Act to charter schools and their organizers violates the equal privileges and immunities clause. Article I, section 23 of the Indiana Constitution provides, "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." To determine a statute's validity under this provision, we employ a two-part test: 1) the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics that distinguish the unequally treated classes, and 2) the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Whistle Stop Inn, Inc. v. City of Indianapolis*, 51 N.E.3d 195 (Ind. 2016). Both parts of the test must be satisfied for the statute to be constitutional. *Id.* In evaluating a statute under this test, we must give considerable deference to legislative discretion. *Giles v. Brown Cty.*, 868 N.E.2d 478 (Ind. 2007). Further, the burden is on the party challenging the statute to negate every conceivable basis for disparate treatment of two classes. *Whistle Stop Inn, Inc.*, 51 N.E.3d 195.

[25] Flanner House contends the disparately treated classes are charter schools, private schools, and nonprofit corporations. Flanner House, however, does not engage in any meaningful discussion or analysis of the required two-part test. Instead, it merely argues that allowing charter schools and their organizers to be protected by the Act is unfair, and it characterizes charter schools as having only public school "status" for the purpose of dealing with students and their

parents but maintains that charter schools are actually private, nonprofit corporations with regard to their transactions with other businesses. Appellant's Br. p. 29.

[26]   Charter schools are neither private schools nor nonprofit corporations; rather, by the plain terms of the statute creating them, they are public schools. *See* Ind. Code § 20-24-4-1. Contrary to Flanner House's argument, this legislative designation does not change depending on with whom the charter school is dealing. Further, although an organizer of a charter school is an entity that has been determined by the Internal Revenue Service to be operating under nonprofit status, *see* Ind. Code § 20-24-1-7, it is not a nonprofit entity separate from the school. Rather, as we determined earlier in this opinion, an organizer and a charter school, together, are the charter school. *See* Issue 1, *supra*. As discussed previously in this opinion, charter schools must be organized and operate according to a charter agreement and are subject to extensive, particularized statutes for their governance and educational matters with a considerable level of governmental oversight. These stringent statutory guidelines and requirements apply only to charter schools and their organizers who, although having the status of a nonprofit entity, are a very specific type of nonprofit performing under a specific charter agreement as the organizer, administrator, and fiscal agent of a charter school. These characteristics are unique and inherent to charter schools, and they distinguish charter schools from both private schools and other nonprofit corporations.

In addition, the disparate treatment conferred by the legislation must be reasonably related to the inherent characteristics differentiating the classes. *Whistle Stop Inn, Inc.*, 51 N.E.3d 195. As our Supreme Court has explained:

> Legislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable. So long as the classification is based upon substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature; nor will we inquire into the legislative motives prompting such classification.

*Collins v. Day*, 644 N.E.2d 72, 80 (Ind. 1994).

The matter of developing the public school system rests with the legislature, which has considerable discretion as to the methods of organization and administration of the system. *Hoagland v. Franklin Twp. Cmty. Sch. Corp.*, 27 N.E.3d 737 (Ind. 2015). In exercising this discretion, the legislature established charter schools as unique education entities that exist as public schools. The legislature also classified charter schools as government entities for purposes of the Act. In fact, all public schools are classified as government entities under the Act. *See* Ind. Code § 34-6-2-110(9).

The Act was adopted to establish procedures for cases involving the prosecution of tort claims against governmental entities. *Hasty v. Floyd Mem'l Hosp.*, 612 N.E.2d 119 (Ind. Ct. App. 1992). By establishing notice requirements and limitations on recovery from government entities, including public schools, the Act advances the legislative policies of protecting the State's finances while ensuring that public employees can exercise their independent judgment

necessary to carry out their duties without the threat of civil litigation over decisions they make within the scope of their employment. *Noble Cty. v. Rogers*, 745 N.E.2d 194 (Ind. 2001). By their very definition, charter schools are public schools, and, as such, they are reasonably classified by the legislature as governmental entities under the Act as are traditional public schools. *See Meury v. Eagle-Union Cmty. Sch. Corp.*, 714 N.E.2d 233 (Ind. Ct. App. 1999) (citing Ind. Code § 34-13-3-8 and stating that notice provision of Act applies to public school corporations and their employees).

[30] Moreover, the legislative intent underlying the establishment of charter schools was to provide innovative and autonomous programs that serve the different learning styles and needs of public school students, offer public school students appropriate and innovative choices, provide varied opportunities for professional educators, allow public schools freedom and flexibility in exchange for exceptional levels of accountability, and provide parents, students, community members, and local entities with an expanded opportunity for involvement in the public school system. Ind. Code § 20-24-2-1 (2005). By extending the liability protections of the Act to charter schools, the legislature furthered its overall purpose of providing innovative programs for public school students and educators while preserving the public treasury and protecting public employees acting within the scope of their employment. We conclude the disparate application of the Act in this instance constitutes treatment that is reasonably related to the inherent characteristics that differentiate charter schools from private schools and other nonprofit corporations.

[31] As to the second part of the test, Flanner House does not dispute that the preferential treatment of charter schools under the Act is uniformly applicable and equally available to all charter schools. Flanner House has not met its burden to negate every conceivable basis which might support the classification.[4] We conclude that application of the notice and liability limitations of the Act to charter schools is constitutional under section 23.

## 3. Open Courts Clause

[32] Flanner House asserts that extending the immunity under the Act to charter schools and their organizers will violate the open courts clause of the Indiana Constitution. The open courts clause provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Ind. Const. art. I, § 12.

[33] The courts of our state have uniformly held that in cases involving injury to person or property, article I, section 12 does not prevent the legislature from modifying or restricting common law rights and remedies. *McIntosh v. Melroe*

---

[4] In arguing that application of the Act in this case violates our state's equal privileges and immunities clause, Flanner House states that the damages it sustained stem from its contractual relationship with Flanner School Inc. and that applying the Act to charter schools and their organizers improperly gives the government a competitive advantage in its commercial dealings, such as entering leases. These contentions are not applicable here as the Act provides immunity for governmental entities only with regard to civil actions in tort. *See* Ind. Code § 34-13-3-1; *see also Orem v. Ivy Tech State Coll.*, 711 N.E.2d 864 (Ind. Ct. App. 1999) (holding the Act is inapplicable to breach of contract cause of action), *trans. denied*.

*Co., a Div. of Clark Equip. Co., Inc.*, 729 N.E.2d 972 (Ind. 2000). Yet, the legislature's actions in this regard are not without limits; any legislative alteration must not interfere with constitutional rights. *Martin v. Richey*, 711 N.E.2d 1273 (Ind. 1999). Legislation that restricts a complete tort remedy must be a rational means to achieve a legitimate legislative goal. *Id.*

[34] As we have noted in this opinion, one of the primary concerns the Act was intended to address was protection of the public treasury, and by extension the taxpayers, from a multitude of tort lawsuits and the possibility of enormous monetary liabilities if government entities were held legally accountable in civil litigation in the same fashion as private entities and persons. *VanDam Estate*, 25 N.E.3d 165. With regard to governmental immunity in the Act, our supreme court has stated, "In tort cases, the source of authority or lack thereof to sue the State originally arose from rights at common law, not from rights contained in the Constitution. Thus, it is within the legislature's authority to expand or restrict the scope of sovereign immunity through the Tort Claims Act." *State v. Rendleman*, 603 N.E.2d 1333, 1337 (Ind. 1992). *Rendleman* concerned a suit against the State for damages allegedly sustained in a motor vehicle accident involving Rendleman and an Indiana State Trooper. In holding that the law enforcement immunity section of the Act was a constitutional exercise of legislative authority, the Court stated: "That [the law enforcement immunity section] may result in Rendleman bearing the full economic burden of his injuries and damages without the ability to insure himself against such losses, is a matter of policy for the legislature, not this Court, to address." *Id.*

[35] Similarly, the extension of the immunity provision of the Act to a charter school and its organizer, which we determined are, jointly, a charter school, is a rational means to achieve the legitimate legislative goal of protecting the public treasury. Accordingly, we conclude that Indiana Code sections 34-13-3-3 and 34-6-2-49(a) reflect a proper exercise of the legislature's authority and do not violate article I, section 12 of the Indiana Constitution.

[36] Having concluded that the trial court properly entered summary judgment for the Appellees and that there are no constitutional violations, we affirm the trial court's judgment.

[37] Judgment affirmed.

Mathias, J., and Crone, J., concur.