ATTORNEY FOR APPELLANTS
Mark Small
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE INDIANA
ASSOCIATION OF CITIES AND TOWNS AND
INDIANA MUNICIPAL LAWYERS ASSOCIATION
J. Lee McNeely
Cynthia A. Bedrick
Scott A. Milkey
McNeely Stephenson
Shelbyville, Indiana

ATTORNEYS FOR AMICUS CURIAE CITY OF
GARY
George A. Gasper
Eric J. McKeown
Ice Miller LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE CITY OF
INDIANAPOLIS, MAYOR GREG BALLARD,
INDIANAPOLIS CITY-COUNTY COUNCIL
Andrew P. Seiwert
Adriana Katzen
Amanda J. Dinges
Pamela G. Schneeman
Office of Corporation Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
HOOSIER PARK, LLC
A. Scott Chinn
Anne K. Ricchiuto
Brian J. Paul
Faegre Baker Daniels LLP
Indianapolis, Indiana

Mark Crandley
Peter J. Rusthoven
Barnes & Thornburg LLP
Indianapolis, Indiana

FILED

Apr 11 2016, 2:30 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

In the

# Indiana Supreme Court

No. 49S02-1604-MI-175

WHISTLE STOP INN, INC. AND
LOUISE LIFORD D/B/A THIRSTY TURTLE,                    *Appellants-Plaintiffs,*

v.

CITY OF INDIANAPOLIS,
MAYOR GREG BALLARD,
INDIANAPOLIS CITY- COUNTY COUNCIL, AND         *Appellees-Defendants*
HOOSIER PARK, LLC,                                                       *Appellee-Intervening*
                                                                                         *Defendant*

Appeal from the Marion Superior Court, No.  49D14-1310-MI-38464
The Honorable James B. Osborn, Judge

On Transfer from the Indiana Court of Appeals, No. 49A02-1407-MI-519

**April 11, 2016**

**Dickson, Justice**.

We uphold Indianapolis' non-smoking ordinance ("Ordinance"), finding that it does not violate the Equal Privileges and Immunities Clause of Article 1, Section 23 of the Indiana Constitution. While the Ordinance provides an exemption to satellite gambling facilities but not to bars and restaurants, Article 1, Section 23 does not prohibit this disparate treatment. We affirm the trial court's grant of summary judgment in favor of the city.

Indianapolis first passed the Ordinance in 2005, banning smoking in public businesses but providing some exemptions, including for bars and taverns that had liquor licenses and neither served nor employed anyone under the age of eighteen. *See* CITY OF INDIANAPOLIS AND MARION COUNTY, IND., REV. CODE tit. III ch. 616 (2005). A 2012 amendment removed the exemption for bars and taverns, but exempted businesses licensed as satellite gambling facilities by April 1, 2012.[1] INDIANAPOLIS REV. CODE tit. III ch. 616 sec. 204(a)(5) (2012). The plaintiffs sued, claiming that the Ordinance violated the Equal Privileges and Immunities Clause of the Indiana Constitution because it applied to them as bars and restaurants but exempted satellite gambling facilities. Hoosier Park, as a licensed satellite gambling facility[2] exempted from the Ordinance, intervened as a defendant. The defendants filed motions for summary judgment, which the trial court granted, finding that the Ordinance's exemptions did not violate the Indiana Constitution.

The plaintiffs appealed, arguing that the trial court erred by denying the plaintiffs' motions for emergency relief and judgment on the pleadings, by granting Hoosier Park's Motion to Intervene, and by granting summary judgment for the defendants on the Equal Privileges and Immunities claim. The defendants responded to these arguments and the City also asserted that

---

[1] The satellite gambling facilities exemption required licensing from the Indiana Horse Racing Commission under Indiana Code chapter 4-31-5.5, which governs satellite facilities providing off-track pari-mutuel wagering on horse races.

[2] To be licensed as a satellite gambling facility, Hoosier Park submitted to the Indiana Horse Racing Commission a Tobacco Management Plan which "tried to accommodate the needs of both customers who smoke and those who do not." Appellants' App'x at 17.

the plaintiffs' claims were barred by *res judicata*.  The Court of Appeals reversed the trial court, holding that the plaintiffs' claims were not barred by *res judicata*, that Hoosier Park was properly permitted to intervene, that judgment on the pleadings would have been inappropriate, and that the Ordinance's exemption for satellite facilities violated the Equal Privileges and Immunities Clause as compared to bars and restaurants.  Whistle Stop Inn, Inc. v. City of Indianapolis, 36 N.E.3d 1118, 1130 (Ind. Ct. App. 2015).  The Court of Appeals severed the satellite facility exemption, finding that the rest of the Ordinance could still be given its intended effect.  *Id.*  The plaintiffs and Hoosier Park each petitioned for transfer,[3] and we now address the constitutionality of the Ordinance's exemptions under the Indiana Constitution's Equal Privileges and Immunities Clause, and, except for severability,[4] summarily affirm the Court of Appeals on the other issues.

Article 1, Section 23 of the Indiana Constitution provides that "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."  This Court in Collins v. Day "adopted a preeminent two-part standard for determining a statute's validity" under this provision:

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes.  Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

Paul Stieler Enters., Inc. v. City of Evansville, 2 N.E.3d 1269, 1273 (Ind. 2014) (quoting Collins v. Day, 644 N.E.2d 72, 80 (Ind. 1994)).  This test applies to municipal ordinances as well as state statutes, and both prongs must be satisfied for the enactment to be constitutional.  *Id.*  "Whether a statute or ordinance is constitutional on its face is a question of law and we review the matter *de novo*," though it "stands before this Court clothed with the presumption of constitutionality until clearly overcome by a contrary showing."  *Id.* at 1272-73 (internal quotations and citations omitted).

---

[3] In previous orders we denied the plaintiffs' transfer petition and now grant Hoosier Park's transfer petition.

[4] Because we uphold the constitutionality of the satellite facility exemption, we do not address severability or summarily affirm the Court of Appeals on this issue.

As established in Collins, we "must accord considerable deference to the manner in which the legislature has balanced the competing interests involved." 644 N.E.2d at 80 (citation omitted). We "[p]resum[e] the statute to be constitutional," placing "the burden upon the challenger to negat[e] every conceivable basis which might have supported the classification." *Id.* (internal quotation omitted). This deference, however, does "not eviscerate the two-prong constitutional test established," but "merely emphasize[s] the importance of appropriate legislative deference, especially with regard to legislative classifications." Paul Stieler, 2 N.E.3d at 1277. "[I]t *is* within the province of this Court to determine whether the exercise of legislative discretion violates express provisions of the Indiana and Federal constitutions." *Id.* (emphasis in original).

The plaintiffs argue that applying the Article 1, Section 23 test may be unnecessary because "[i]f Paul Stieler controls, there is no need for further analysis." Appellants' Br. at 25. While Paul Stieler did involve a superficially similar ordinance and constitutional claim, important differences prevent it from controlling our decision here. Instead, we apply anew the two-part Collins test to the challenged exemptions in this Ordinance. Because of differing views among the parties, we particularly address inherent characteristics of classes and the role of legislative deference.

### 1. The First Collins Prong

Under the first prong of the Collins test, "the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes." 644 N.E.2d at 80. In this case, the disparately treated classes are satellite gambling facilities, which are exempted from the Ordinance, and bars and restaurants, where the Ordinance bans smoking. "In analyzing a Section 23 challenge, it is the disparate classification alleged by the challenger, not other classifications, that warrants review." Myers v. Crouse-Hinds Div. of Cooper Indus., Inc., --- N.E.3d ----, ---- (Ind. 2016); 2016 WL 825111 at *3. But those classifications must "have a sufficient basis in the challenged legislation." *Id.* Here, the plaintiffs argued in their Motion for Judgment on the Pleadings that the Ordinance violates Article 1, Section 23 "in that smoking is banned in taverns and restaurants but allowed in satellite

4

gambling facilities." Appellants' App'x at 85. *See also* Appellants' Br. at 13 (arguing that Indianapolis "has not established the inherent qualities that justify unequal treatment of Bar Owners and Hoosier Park"). This class distinction has a sufficient basis in the Ordinance, which exempts "[a]ny business that on or before April 1, 2012 held a license pursuant to IC 4-31-5.5 to operate a satellite facility in the consolidated city and county" but did not exempt bars and restaurants such as the plaintiffs. INDIANAPOLIS REV. CODE tit. III ch. 616 sec. 204(a)(5). Under this first prong we therefore examine whether the Ordinance's disparate treatment is reasonably related to any of these classes' inherent characteristics.

### a. Inherent Characteristics

The plaintiffs and defendants apply different definitions of "inherent" when identifying potentially inherent characteristics. The plaintiffs cite several dictionaries, arguing that "inherent" characteristics are "permanent," "essential," "intrinsic," and "inalienable." Appellants' Br. at 31. Hoosier Park responds that under Indiana case law, "different regulatory treatment between legislatively created classes" may be "inherent for purposes of equal privileges and immunities analysis." Appellee Hoosier Park's Pet. to Tr. Reply Br. at 1. Under Indiana's Equal Privileges and Immunities Clause, "inherent" does not refer only to immutable or intrinsic attributes, but to any characteristic sufficiently related to the subject matter of the relevant Collins classes.

Collins itself was not concerned with dictionary definitions of "inherent," but with long-standing precedent that "[t]here must be inherent differences in situation related to the subject-matter of the legislation which require, necessitate, or make expedient different or exclusive legislation with respect to the members of the class." 644 N.E.2d at 78 (quoting Heckler v. Conter, 206 Ind. 376, 381, 187 N.E. 878, 879 (1933)). Such difference must have "reference to the subject matter." Collins, 644 N.E.2d at 80. Differences unrelated to the subject matter cannot satisfy the Equal Privileges and Immunities Clause's inherency requirement, which "incorporates and satisfies the often expressed concerns that such legislative classifications be 'just,' 'natural,' 'reasonable,' 'substantial,' 'not artificial,' 'not capricious,' and 'not arbitrary.'" *Id.* at 79 (citations omitted).

This meaning of "inherent" is reflected in our Article 1, Section 23 decisions. In Collins, "the prevalence of sole proprietorships and small employment units" and "the distinctive nature of farm work" were among inherent characteristics of Indiana agricultural employers. 644 N.E.2d at 81. In Gambill v. State, the presence of mental illness was inherent to "those who are mentally ill and commit crimes, but who also appreciate the wrongfulness of their conduct." 675 N.E.2d 668, 677 (Ind. 1996). In Martin v. Richey, medical treatment and medical malpractice insurance were inherent to health care providers and medical malpractice victims. 711 N.E.2d 1273, 1281 (Ind. 1999). And in Horseman v. Keller and League of Women Voters of Indiana, Inc. v. Rokita, not being present at the Election Day polling site was inherent to being an absentee voter. 841 N.E.2d 164, 172 (Ind. 2006); 929 N.E.2d 758, 770 (Ind. 2010). These characteristics refer to the subject matter distinguishing the classes and are therefore inherent for purposes of Article 1, Section 23.

We have also found that some attributes are not inherent to certain class distinctions. Preserving rural land around urban areas and preventing cities from annexing each other's land are not inherent to a county with a population of 200,000-300,000. Mun. City of South Bend v. Kimsey, 781 N.E.2d 683, 694 (Ind. 2003). Likewise, a high percentage of out-of-town customers and recent upgrades to ventilation systems are not inherent to riverboat gambling facilities. Paul Stieler, 2 N.E.3d at 1275. When, as in these cases, a difference is so unrelated to the relevant classes that it does not refer to the subject matter distinguishing the classes, it is not inherent and cannot serve as a basis for disparate treatment under Article 1, Section 23.

In this case, the satellite facility exemption in the Ordinance requires that the facility hold "a [satellite gambling facility] license pursuant to IC 4-31-5.5. . . ." INDIANAPOLIS REV. CODE tit. III ch. 616 sec. 204(a)(5). To become licensed, a satellite facility must submit an application to the Indiana Horse Racing Commission which includes "[a] description of the heating and air conditioning units, smoke removal equipment, and other climate control devices at the proposed satellite facility." Ind. Code § 4-31-5.5-4(11). The plaintiffs argue that this licensing requirement is not an inherent difference because "[a] legislative body may not, by its mere label of groups or conference of status upon those groups imbue those groups with 'inherent'

6

characteristics for purposes of Art. 1 § 23." Appellants' Br. at 32. But the City of Indianapolis did not imbue the satellite gambling facility with its inherent characteristic as a state-licensed facility. The City chose to treat differently two classes which already possessed distinguishing inherent attributes that "require, necessitate, or make expedient different or exclusive legislation with respect to the members of the class." Collins, 644 N.E.2d at 78.

Here, the application requirement is inherent because Indiana's legislature has made it a prerequisite to being a licensed satellite gambling facility. Without specifying "the heating and air conditioning units, smoke removal equipment, and other climate control devices," a facility cannot be licensed under Indiana Code section 4-31-5.5 and therefore would not be exempted from the Ordinance. Ind. Code § 4-31-5.5-4(11). A satellite gambling facility authorized under this statute cannot exist without compliance with this provision, which thus makes it an inherent characteristic of such a facility. The City chose to use this statutory licensing requirement as the basis of an Ordinance exemption. We give "considerable deference" to these choices because "[t]he question of classification under Section 23 is primarily a legislative question." Collins, 644 N.E.2d at 80. "[W]e will not substitute our judgment for that of the legislature; nor will we inquire into the legislative motives prompting such classification." Id.[5] We conclude that the first prong of Collins is satisfied because the disparate application of the Ordinance constitutes treatment that is reasonably related to the inherent characteristics that differentiate bars and restaurants from state-licensed satellite gambling facilities.

### b. Reasonable Relation

Under Collins' first prong, disparate treatment must also be reasonably related to an inherent characteristic differentiating the classes. Id. The plaintiffs correctly argue that "[t]here is no requirement in the Indianapolis ordinance that 'tobacco management' be part of a licensure process." Appellants' Br. at 27. But obtaining a license in accordance with the Ordinance does require a description of "the heating and air conditioning units, smoke removal equipment, and

---

[5] The plaintiffs also argue that "smoking is not inherent to gambling and drinking." Appellants' Br. at 33. We do not consider this argument because we look at "inherent characteristics which rationally distinguish the unequally treated classes," and the classes here are not gambling and drinking. Collins, 644 N.E.2d at 79.

7

other climate control devices." Ind. Code § 4-31-5.5-4(11). This description allows the Indiana Horse Racing Commission to consider the effects of smoking in making its licensing decisions, making it reasonably related to the Ordinance's exemption for satellite gambling facilities.[6] We "accord considerable deference to the manner in which the [City] has balanced the competing interests involved" in finding that the licensing requirement is reasonably related to the decision to exempt satellite gaming facilities but not bars and restaurants. Collins, 644 N.E.2d at 80.

Paul Stieler also holds that because certain factors were "not embodied" in its challenged ordinance "as prerequisites," they were "clearly not inherent distinguishing characteristics" and were not reasonably related to the disparately treated classes. 2 N.E.3d at 1275. After the Court of Appeals in this case applied that language, *amici curiae* City of Gary, Indiana Association of Cities and Towns, and Indiana Municipal Lawyers Association filed briefs requesting clarification of this precedent. Specifically, *amici* are concerned that a municipality may be required "to specifically identify, on the face of all class-creating ordinances, all distinguishing characteristics of each class and the reasons for those distinctions." Br. of *Amici Curiae* Ind. Ass'n of Cities and Towns and Ind. Mun. Lawyers Ass'n at 2. We clarify today that inherent distinguishing characteristics and how they are reasonably related to disparate treatment do not have to be specifically stated or explained in an ordinance. As Collins noted, it is enough that "[t]he legislative classification *may* have been based upon various features reasonably distinguishing Indiana agricultural employers from other employers . . . ." 644 N.E.2d at 81 (emphasis added). Disparate treatment may be related to structural differences embodied in an ordinance or statute which create inherent distinguishing characteristics that are reasonably related to the disparate treatment.

## 2. The Second Collins Prong

The plaintiffs also argue that the Ordinance violates the second prong of the Collins test because it "creates a monopoly" and "creates a preference and establishes an inequality among a

---

[6] The comprehensive Tobacco Management Plan, which the Indiana Horse Racing Commission required Hoosier Park to complete, exemplifies why the Ordinance exemption is reasonably related to the licensing requirement–though the reasonable relation exists without it.

class of citizens all of whom are equally meritorious." Appellants' Br. at 35, 37. "[U]nder the second element of the Collins analysis, any 'preferential treatment must be uniformly applicable and equally available to all persons similarly situated.'" Myers, --- N.E.3d at ----; 2016 WL at *4 (quoting Collins, 644 N.E.2d at 80). The preferential treatment here–exemption from the Ordinance–does not violate the second prong because the restaurants and bars are not similarly situated with satellite gambling facilities. The plaintiffs are correct that the "[l]egislature cannot take what might be termed a natural class of persons, split that class in two, and then arbitrarily designate . . . the original unit as two classes, and thereupon enact different rules for the government of each." Appellants' Br. at 32. *See* Myers, --- N.E.3d at ----; 2016 WL at *4 (finding that Collins' second prong was violated when the legislature treated two classes of similarly situated tort plaintiffs differently based only on the nature of the tortfeasor). But here, satellite gambling facilities are significantly different from bars and restaurants–they are distinct types of businesses with separate licensing requirements and provide different services. The applicable licensing requirements and regulations are not arbitrary, but are tailored to the type of business. Indiana Code Title 4 Article 31 regulates "Pari-Mutuel Wagering on Horse Races" including "Satellite Facilities." This article contains thirteen Chapters and dozens of Sections regulating myriad areas of horse racing and horse-race gambling, all tailored to this specific area of business. These regulations apply to Hoosier Park, but not to bars and restaurants. Under this analysis, the classes are not "similarly situated," and the second prong is not violated. Collins, 644 N.E.2d at 80.

The Ordinance also does not violate Article 1, Section 23 by relying on "solely economic" rationales. Appellants' Br. at 38. The plaintiffs argue that this case is like Paul Stieler, where the smoking ban exemption was "tantamount to the government 'selling' an exemption from the Smoking Ban for the bonus of anticipated financial benefits while burdening other citizens and snubbing our framers' intent in drafting Article 1, Section 23." 2 N.E.3d at 1276. The plaintiffs here make essentially the same argument as the Paul Stieler plaintiffs: "fiscal considerations can never be used to justify disparate treatment." 2 N.E.3d at 1275. *See also* Appellants' Br. at 38 ("The basis for Hoosier Park's exemption is solely economic."). This argument "misses the point" because "we focus not on the *purposes* presumably motivating the enactment, but on the disparate *treatment* it accords." 2 N.E.3d at

9

1275 (emphasis in original). The disparate treatment resulting from the Ordinance satisfies both prongs of the Collins test for reasons wholly distinct from economic justifications. But even looking at the legislative purposes, which "may be considered," does nothing to change this analysis. *Id.* The Ordinance's purposes are not economic, but "are (1) to protect the public health and welfare by prohibiting smoking in public places, and place of employment; and (2) to guarantee the right of nonsmokers to breathe smoke-free air, and to recognize that the need to breathe smoke-free air shall have priority over the desire to smoke." Appellees' Joint App'x at 403.

Furthermore, even if the Ordinance's stated purposes were pretextual and the City included the satellite gambling facility exemption in part to gain economic benefits, the Ordinance would not violate Article 1, Section 23. As the historical analyses in Paul Stieler and Collins make clear, an enactment violates the Equal Privileges and Immunities Clause when "[i]t condones a privilege for purchase" and "is tantamount to the government 'selling' an exemption . . . for the bonus of anticipated financial benefits while burdening other citizens . . . ." 2 N.E.3d at 1276 (rejecting a solely economic rationale for disparate treatment); 644 N.E.2d at 76-77. While economic benefit alone cannot justify treating citizens disparately, "[t]he Delegates of the Constitutional Convention of 1850 to 1851 did not see Article 1, Section 23 as an obstacle for legislation that advanced the public good." Paul Stieler, 2 N.E.3d at 1280 n.1 (Rush, J., dissenting). The plaintiffs' argument that "Hoosier Park advocated economic benefits [that the] City would realize" does not establish a privilege for purchase–especially considering the defendants' non-economic justifications for the exemptions. Appellants' Br. at 40.

The plaintiffs' arguments do not "negate every conceivable basis which might have supported the classification." Paul Stieler, 2 N.E.3d at 1277. The plaintiffs argue that under Paul Stieler, they "do not have to negate every possible basis for the ordinance." Appellants' Br. at 41. Of course, plaintiffs are not required to come up with dozens of possible legislative rationales and refute each one in a complaint or appellate brief. *See* Paul Stieler, 2 N.E.3d at 1277. The requirement to "negate every conceivable basis," however, reflects the heavy burden on plaintiffs in establishing the unconstitutionality of a statute. *Id.* If the challenged statute itself or a defendant advances a rationale which would satisfy Article 1, Section 23, plaintiffs must

negate it in order to carry the burden of proof.[7]

## Conclusion

The challenged Ordinance does not violate the Equal Privileges and Immunities Clause of the Indiana Constitution. The Ordinance's exemption for satellite gambling facilities is reasonably related to the inherent differences distinguishing satellite gambling facilities from bars and restaurants. The Ordinance also does not create a monopoly or treat similarly situated classes disparately in violation of Article 1 Section 23. We affirm the trial court's grant of summary judgment in favor of the City.

Rush, C.J., and Rucker, David, and Massa, JJ., concur.

---

[7] Paul Stieler did not hold, as the plaintiffs contend, that "where the matter is unconstitutional on its face as here, [plaintiffs] are relieved of th[e] burden [to negate every conceivable basis which might have supported the classification]." Appellants' Br. at 13.