

**FILED**

Jan 16 2018, 9:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Kim E. Ferraro
Samuel J. Henderson
Hoosier Environmental Council
Valparaiso, Indiana

ATTORNEY FOR APPELLEE –
RESPONDENT

Grant M. Reeves
Barada Law Offices LLC
Rushville, Indiana

ATTORNEYS FOR APPELLEE –
INTERVENOR

Todd J. Janzen
Brianna J. Schroeder
Janzen Agricultural Law LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| House of Prayer Ministries, Inc. d/b/a Harvest Christian Camp, | January 16, 2018 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 21A01-1707-MI-1693 |
| v. | Appeal from the Fayette Circuit Court |
| Rush County Board of Zoning Appeals, | The Honorable Hubert Branstetter, Jr., Judge |
| *Appellee-Respondent,* | Trial Court Cause No. 21C01-1610-MI-607 |
| Milco Dairy Farm, LLC, | |
| *Appellee-Intervenor.* | |

**Najam, Judge.**

# Statement of the Case

House of Prayer Ministries, Inc., d/b/a Harvest Christian Camp ("House of Prayer"), appeals from the trial court's denial of its petition for judicial review from the decision of the Rush County Board of Zoning Appeals ("BZA") to grant a special exception to Milco Dairy Farm, LLC ("Milco")[1] in Milco's construction and operation of a concentrated animal feeding operation ("CAFO"), which was a dairy operation consisting of 1,400 head of cattle. House of Prayer raises three issues for our review, which we restate as the following five issues:

> 1. Whether, in its decision to grant a special exception to Milco, the BZA failed to properly evaluate the public interest.
>
> 2. Whether the BZA's decision failed to properly consider impacts on surrounding properties.
>
> 3. Whether the BZA failed to properly consider setback requirements.
>
> 4. Whether the BZA's decision violated House of Prayer's right to an impartial tribunal.
>
> 5. Whether the BZA's grant of a special exception to Milco violated House of Prayer's religious rights under the federal Religious Land Use and Institutionalized Persons Act, 42 U.S.C.A. §§ 2000cc to 2000cc-5 (West 2017) ("RLUIPA"); Indiana's Religious Freedom Restoration Act, Ind. Code §§ 34-

---

[1] Milco has joined in the BZA's brief on appeal.

13-9-1 to -11 (2017) ("RFRA"); or Article 1, Sections 2 and 3 of the Indiana Constitution.

[2] We affirm.

## Facts and Procedural History[2]

[3] In November of 2015, Milco filed a permit with the BZA for a special exception to Rush County zoning ordinances in order to obtain local approval for the construction and operation of a new CAFO. Over two public meetings in March and April of 2016, the BZA heard evidence and testimony for and against Milco's permit request. The evidence established that Milco sought to maintain 1,400 head of cattle at the proposed CAFO location. To accommodate the waste produced by the livestock, Milco proposed to construct on-site storage for 17.4 million gallons of waste in open-air lagoons. Milco's plans further provided that no run-off would occur from the property. Milco presented evidence of mitigation efforts it planned to take to reduce noxious odors from its proposed CAFO, and its plans were approved by both the Indiana Department of Environmental Management and the local drainage board.

[4] House of Prayer appeared at those meetings as a remonstrator against Milco's permit request. House of Prayer operates a religious summer youth camp certified by the Indiana Department of Health. House of Prayer can host up to

---

[2] The statement of facts in House of Prayer's brief on appeal is not consistent with our standard of review. *See* Ind. Appellate Rule 46(A)(6)(b).

768 children per summer at its camp, which consists of several "multi-day or week long overnight programs for children and teens over eight years old." Appellant's App. Vol. IV at 138. House of Prayer holds its summer camp outdoors on property that is one-half mile, and downwind, from Milco's proposed CAFO. House of Prayer objected to Milco's permit request on the basis that the waste produced by the CAFO would be dangerous to attendees at House of Prayer's events and that the prevailing winds in the area would make the CAFO both a nuisance to House of Prayer and a risk to its attendees. House of Prayer also asserted that the construction of the CAFO would diminish House of Prayer's property value.

[5] After all interested parties had presented to the BZA at the April 2016 hearing, the BZA called for a twenty-minute break before holding a vote on the permit request. During that break, Rush County Commissioner Mark Bacon approached BZA member Craig Trent and attempted to speak to Trent. But Trent promptly informed Bacon that Trent "couldn't speak to him" and Trent directed Bacon to speak to the BZA's attorney. Appellant's App. Vol. VI at 118. Trent later testified that he "d[id not] know" what Bacon had tried to say to him and that he "didn't listen" to Bacon. *Id.* at 119. Rather, Trent "walked away." *Id.* Bacon also later testified that he had no reason to doubt Trent's statement that Trent did not hear what Bacon had attempted to say. *Id.* at 143. After the recess, the BZA held its vote and granted Milco's petition for a special exception. In July of 2016, the BZA entered findings of fact in support of its

decision and granted the special exception subject to various conditions of approval.

[6] House of Prayer filed a petition for judicial review from the BZA's decision and also sought declaratory judgment. The parties filed briefs for and against House of Prayer's petition and designated evidence in support of their briefs. After argument to the court, the court entered findings of fact and conclusions thereon in which the court denied House of Prayer's petition for judicial review and request for declaratory judgment. This appeal ensued.

# Discussion and Decision

## *Overview*

[7] House of Prayer appeals from the trial court's denial of its petition for judicial review.[3] As our Supreme Court has explained:

> A trial court and an appellate court both review the decision of a zoning board with the same standard of review. *Crooked Creek Conservation and Gun Club, Inc. v. Hamilton County N. Bd. of Zoning Appeals*, 677 N.E.2d 544, 547 (Ind. Ct. App. 1997), *trans. denied*, 690 N.E.2d 1182 (Ind. 1997) (table). A proceeding before a trial court or an appellate court is not a trial *de novo*; neither court may substitute its own judgment for or reweigh the evidentiary findings of an administrative agency. *Id. See also Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n*, 758 N.E.2d 34, 37 (Ind. 2001). The appropriate standard of review, "whether at the trial or appellate level, is limited to determining whether the

---

[3] House of Prayer does not appeal the denial of its request for declaratory judgment.

zoning board's decision was based upon substantial evidence." *Crooked Creek Conservation*, 677 N.E.2d at 547.

*St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cty.*, 873 N.E.2d 598, 600 (Ind. 2007). Further:

> When an aggrieved party seeks relief in court from an adverse administrative determination and attacks the evidentiary support for the agency's findings, he bears the burden of demonstrating that the agency's conclusions are clearly erroneous. *Cundiff v. Schmitt Dev. Co.*, 649 N.E.2d 1063, 1066 (Ind. Ct. App. 1995). That standard requires great deference toward the administrative board when the petition challenges findings of fact or the application of the law to the facts. *Id.* But if the allegation is that the [agency] committed an error of law, no such deference is afforded and reversal is appropriate if an error of law is demonstrated. *Id.*

> There is a presumption that determinations of a zoning board, as an administrative agency with expertise in the area of zoning problems, are correct and should not be overturned unless they are arbitrary, capricious, or an abuse of discretion. *Id.* A decision is arbitrary, capricious, or an abuse of discretion if it is not supported by substantial evidence. *Rice v. Allen Cnty. Plan Comm'n*, 852 N.E.2d 591, 597 (Ind. Ct. App. 2006), *trans. denied*.

*MacFadyen v. City of Angola*, 51 N.E.3d 322, 325-26 (Ind. Ct. App. 2016). Where, as here, the trial court has entered factual findings based only on a paper record, this Court will conduct its own *de novo* review of that record.

*Cook v. Adams Cty. Plan Comm'n*, 871 N.E.2d 1003, 1006 (Ind. Ct. App. 2007), *trans. denied*.[4]

[8] House of Prayer raises a number of challenges to the BZA's decision to grant a special exception to Milco. In particular, House of Prayer raises the following arguments on appeal: (1) the BZA did not properly evaluate the public interest when it decided to grant a special exception to Milco; (2) the BZA did not properly consider the impact on surrounding properties; (3) the BZA did not properly consider setback requirements; (4) Trent's participation in the BZA vote after the attempted *ex parte* communication with Bacon violated House of Prayer's rights; and (5) the BZA's decision violates House of Prayer's religious rights under RLUIPA, RFRA, and the Indiana Constitution. We address each argument in turn.

## Issue One: "Public Interest"

[9] We first consider House of Prayer's argument that the BZA did not properly consider the public interest when it granted Milco the special exception. Pursuant to Rush County's zoning ordinances: "[a] special exception shall not be granted . . . unless and until . . . [t]he Board of Zoning Appeals shall make a finding . . . that the granting of the Special Exception will not adversely affect

---

[4] With respect to Bacon's alleged interaction with Trent during the twenty-minute recess at the April 2016 BZA meeting, the trial court received evidence that was not before the BZA. However, that evidence was only in paper form and was not produced at an evidentiary hearing in which the trial court acted as a fact finder. As such, our review of that evidence is *de novo*. *Cook*, 871 N.E.2d at 1006.

the public interest." Appellant's App. Vol. VI at 24. In considering the public interest here, the BZA found as follows:

> The BZA finds that the granting of the Special Exception will not adversely affect the public interest, subject to the additional conditions and restrictions placed on the project by the BZA. The public interest refers to the wellbeing of the Rush County community as a whole. While there may be some incidental nuisances associated with construction of the [CAFO] in the immediate area, as a whole[] the citizens of Rush County will benefit from the economic development opportunities this project brings. The evidence at the public hearing demonstrated that the [CAFO] project would provide economic benefits to the public through local property taxes and additional employment opportunities. Any nuisances involved are of the type expected from CAFO/CFO operations, which are clearly allowed/allowable uses under the Rush County Zoning Ordinance in the district where the proposed [CAFO] is to be located.

> The BZA determined that the following were necessary additional conditions for such approval, all of which must be satisfied and will be placed on the project as a written commitment to run with the land:

> 1) All manure removed from the [CAFO] will be knifed in.

> 2) The truck entrance into the facility will be 100 feet wide and maintained for a distance of 200 feet back to the cul-de-sac/truck turn-around, as shown on the plans. There will also be a truck turn-a-round [sic] or cul-de-sac. The entrance and truck turn-around or cul-de-sac need not be paved, but [it] must be sufficient to support semi[-]truck traffic and equipment to allow for a space off of the roadway to prevent congestion on the roadway.

3) The shelterbelt will include a minimum of 8 foot tall trees on all sides and shall be on top of a 6 foot berm on the eastern side of the project. The trees will initially be at least 2 feet tall.

4) Signed land agreements with area farmers adequate to allow for the disposal of all manure shall be turned in to the Rush County/Rushville Joint Planning and Zoning Office prior to the issuance of any improvement location permit.

5) No more than 1400 head of dairy cattle and no other livestock of any kind shall be permitted at this time at the [CAFO]. Any additional livestock of any kind will require an additional special exception subject to the same rules as an initial CAFO/CFO special exception application under the Rush County Zoning Ordinance.

The BZA finds that the granting of this special exception, subject to the additional conditions above, will not adversely affect the public interest.

Appellant's App. Vol. V at 106.

[10]    House of Prayer asserts that the BZA's assessment of the public interest with respect to the "Rush County community as a whole" is inconsistent with a recent position the BZA took before this Court in *Flat Rock Wind, LLC v. Rush County Area Board of Zoning Appeals*. In *Flat Rock*, the BZA granted a special exception for the construction of a wind farm subject to setback requirements that were in excess of the minimum setback requirements under the relevant ordinances. We concluded that the BZA's imposition of the additional setback requirements was consistent with the BZA's broad authority under the zoning

ordinances to consider "the life, health, and safety of the surrounding landowners." 70 N.E.3d 848, 861 (Ind. Ct. App. 2017), *trans. denied*.

[11]   House of Prayer asserts, in effect, that because the BZA imposed additional setback requirements in *Flat Rock* it was required to impose additional setback requirements against Milco. We cannot agree. Nothing in our opinion in *Flat Rock* suggests that the BZA must always impose additional setback requirements. Rather, in *Flat Rock*, we affirmed the BZA's broad discretion under the zoning ordinances to consider the impact on other property owners in deciding whether, and under what conditions, to grant special exceptions, which is not inconsistent with the BZA's decision in the instant appeal. Further, the BZA's position in *Flat Rock* was not premised on a particular definition of "public interest," nor did we hold that the BZA may not consider, in its discretion, the local economic impact on a case-by-case basis.[5] In essence, House of Prayer's argument on this issue seeks to have this Court reweigh the evidence in House of Prayer's favor and to deny the BZA its discretion, which we cannot do. Accordingly, we cannot say that the BZA's consideration of the "public interest" here was contrary to law.

---

[5] House of Prayer further asserts that there was "no such evidence" before the BZA of the CAFO's economic impact "other than the self-serving statement of Milco's owner . . . ." Appellant's Br. at 21 & n.6. House of Prayer's assertion is facially inconsistent—a self-serving statement is evidence. *See Hughley v. State*, 15 N.E.3d 1000, 1003-04 (Ind. 2014).

## Issue Two: Surrounding Properties

[12] House of Prayer next asserts that the BZA failed to properly consider the impact of Milco's CAFO on surrounding properties when it granted the special exception. According to the zoning ordinances, before it may issue a special exception the BZA "shall make written findings" and "shall ascertain that satisfactory provision and arrangement has been made concerning . . . [g]eneral compatibility with adjacent properties and other property in the district." Appellant's App. Vol. VI at 24-25. On this issue, the BZA's written findings state: "Given that this parcel is located in an A-3 zoning district, where agricultural development is expected, the BZA finds that this use is compatible with the adjacent properties." Appellant's App. Vol. V at 108.

[13] House of Prayer's entire argument on this issue is premised on its assertion that "extensive evidence was presented to the BZA that the proposed CAFO will adversely affect both neighbors' health and property values . . . . The BZA wholly disregarded this evidence." Appellant's Br. at 25. But we agree with the BZA that House of Prayer "just ignores any evidence that does not support its case and asks this Court to do the same, which is the opposite of what the standard of review requires." Appellee's Br. at 22. In particular, House of Prayer does not cite or discuss the substantial evidence that supports the BZA's decision to grant the special exception to Milco.

[14] In other words, House of Prayer asks this Court to consider only the evidence House of Prayer considers worthy of credit and the conclusions House of Prayer has reached from that evidence, which we cannot do. We also disagree

with House of Prayer's assertion that the BZA's findings on this issue "are merely a general replication of the requirements of the ordinance." Appellant's Br. at 25. We cannot say that the BZA's decision on this issue is contrary to law.

### Issue Three: Setback Requirements

[15] House of Prayer next asserts that the BZA erred when it permitted Milco's CAFO to be located one-half mile, rather than one full mile, from House of Prayer's property.[6] According to the relevant zoning ordinance: "[s]eparation distance from an existing CFO/CAFO structure or school shall be a minimum of one (1) mile which shall be measured from the nearest CFO/CAFO structure to the school." Appellant's App. Vol. V at 220. But the ordinance does not define "school" for purposes of the CAFO setback. As such, House of Prayer asserts that a broad definition that captures its summer camp must apply. Appellant's Br. at 27 (asserting that "school" in the zoning ordinance must mean any "organization that provides instruction" to or "the teaching of children").

[16] But we cannot say as a matter of law that the BZA was required to adopt such a broad definition of "school" over a more limited definition that applies to entities more "traditionally thought of and known as 'school.'" *See, e.g.*, *John Doe v. Boone Cty. Prosecutor*, 85 N.E.3d 902, 909 (Ind. Ct. App. 2017). A BZA's

---

[6] We address House of Prayer's argument that not applying the one-mile setback provision to it violates RLUIPA in Issue Five.

interpretation of a zoning ordinance, which it is charged with the duty of enforcing, "is entitled to great weight," unless that interpretation "would be inconsistent with the [ordinance] itself." *St. Charles Tower*, 873 N.E.2d at 603 (quotation marks omitted). We conclude that the omission of a definition of "school" within the ordinance rendered that language ambiguous, which placed the interpretation of that language within the reasonable discretion of the BZA. And we cannot say that the BZA's decision that "school" does not include House of Prayer's summer camps was an interpretation inconsistent with or contrary to the ordinance itself.

[17] Still, House of Prayer asserts that the BZA's interpretation of "school" violates the Equal Privileges and Immunities Clause under Article 1, Section 23 of the Indiana Constitution.[7] In particular, House of Prayer states that applying the one-mile setback to "other types of schools, but not youth camps," is disparate treatment that is not reasonably related to inherent characteristics that distinguish the unequally treated classes. Appellant's Br. at 29 (footnote omitted). House of Prayer further asserts that the BZA's preferential treatment is not uniformly applicable and equally available to all persons similarly situated. *See, e.g.*, *Collins v. Day*, 644 N.E.2d 72, 78-79 (Ind. 1994).

---

[7] In its brief, the BZA suggests that House of Prayer lacks standing to raise a claim under Art. 1, § 23 because House of Prayer is an incorporated entity rather than a "citizen." Appellee's Br. at 25 n.12; *see* Ind. Const. art. 1, § 23. But the Indiana Supreme Court has applied Art. 1, § 23 to businesses. *See, e.g.*, *Whistle Stop Inn, Inc. v. City of Indianapolis*, 51 N.E.3d 195, 202-03 (Ind. 2016). Thus, we are not persuaded by the BZA's suggestion.

As our Supreme Court has stated, we apply a two-part test for determining a statute's validity under Article 1, Section 23:

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

*Whistle Stop Inn, Inc. v. City of Indianapolis*, 51 N.E.3d 195, 198 (Ind. 2016) (citation omitted). We presume an ordinance to be constitutional, and the burden is on the challenger to "negate every conceivable basis which might have supported the classification." *Id.* (quotation marks and alterations omitted).

As to the first part of our Article 1, Section 23 test, we agree with the BZA that the disparate treatment is reasonably related to inherent characteristics that distinguish schools from summer camps. Among other reasons, schools are highly regulated by the Indiana Department of Education; the school year lasts 180 full instructional days; and, generally, children under eighteen years of age in Indiana must attend school. *See, e.g.*, I.C. §§ 20-30-2-3, -33-2-6. Voluntary, week-long summer camps do not have such characteristics. And a one-mile setback, rather than a one-half mile setback, is reasonably related to those inherent characteristics.

We also agree with the BZA's assessment under the second part of our Article 1, Section 23 test. The one-mile setback requirement for schools and one-half

mile setback for other entities treats all schools the same and it treats all summer camps the same. Thus, the ordinance is "uniformly applicable and equally available to all persons similarly situated." *Whistle Stop*, 51 N.E.3d at 198. House of Prayer has not met its burden to demonstrate that the BZA's application of the ordinance is contrary to Article 1, Section 23.

## Issue Four: Alleged *Ex Parte* Communication

[21] We next consider House of Prayer's argument that Bacon's attempt to communicate with Trent during the twenty-minute recess at the April 2016 BZA meeting violated House of Prayer's rights. In particular, House of Prayer asserts that Bacon's attempt to communicate with Trent violated House of Prayer's right to an impartial hearing before the BZA, which right is secured by statutory and constitutional provisions. *See, e.g.*, *City of Hobart Common Council v. Behav. Inst. of Ind., LLC*, 785 N.E.2d 238, 250-51 (Ind. Ct. App. 2003).

[22] Although the parties dispute the proper standard to be applied to this issue, we conclude that the dispositive question is whether House of Prayer presented any evidence to show that an *ex parte* communication between Bacon and Trent actually occurred. Despite House of Prayer's strident assertions to the contrary on appeal, our review of the record demonstrates that there is no such evidence. Rather, the record is clear that Bacon attempted to speak to Trent but that Trent did not listen to Bacon, did not know what Bacon had tried to say to him, told Bacon to talk to the BZA's lawyer, and walked away. Bacon also testified that he had no reason to doubt Trent's testimony that Trent did not hear him. The

undisputed evidence thus shows that there was no *ex parte* communication in the first instance. As such, House of Prayer's argument on this issue must fail.

## Issue Five: House of Prayer's Religious Rights

[23] Finally, House of Prayer asserts that the BZA's grant of the special exception to Milco violates House of Prayer's religious rights. In particular, House of Prayer asserts that the BZA's decision violates the following: RLUIPA, RFRA, and the Indiana Constitution. We address each of the House of Prayer's religious arguments in turn.

### *RLUIPA*

[24] We first consider House of Prayer's argument that the BZA violates House of Prayer's rights under RLUIPA. Under RLUIPA, "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden" is both "in furtherance of a compelling government interest" and "the least restrictive means of furthering that compelling government interest." 42 U.S.C.A. § 2000cc(a)(1). RLUIPA further provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C.A. § 2000cc(b)(1). RLUIPA defines a "land use regulation" in relevant part as "a zoning . . . law, or the application of such a law, that limits or restricts a claimant's use . . . of land . . . , *if the claimant*

*has . . . [a] property interest in the regulated land . . . .*"  42 U.S.C.A. § 2000cc-5(5) (emphasis added).

[25]  House of Prayer asserts that the BZA's decision is a substantial burden on House of Prayer's religious exercise that does not pass the strict scrutiny test articulated in RLUIPA and that the BZA's decision with respect to the setback requirement does not treat House of Prayer on equal terms with nonreligious entities.  However, we conclude, as a matter of first impression, that RLUIPA is not available to House of Prayer.  By its plain terms, RLUIPA may be raised only by a claimant who has a "property interest in the regulated land." *Id.* That is, RLUIPA applies to land use regulations imposed by a government directly on religious groups.

[26]  The land regulated by the special exception here is wholly owned by Milco. House of Prayer has no property interest in that land.  As such, House of Prayer may not rely on RLUIPA.  *See id.*

[27]  Nonetheless, House of Prayer asserts that "regulated land" in RLUIPA must mean any land that is *affected* by a regulation, even if the regulation is specifically directed to land in which the claimant has no interest.  Appellant's Br. at 41-45.  We decline House of Prayer's request to disregard the plain language of RLUIPA and, in its place, to apply an expansive and vague requirement that RLUIPA instead be available to any property owner whose interests might be affected by a given regulation.  Indeed, the special exception here contemplates the CAFO's effect on the entire "Rush County community."

Appellant's App. Vol. V at 106. Under House of Prayer's reading of RLUIPA, then, every citizen in Rush County would potentially have a RLUIPA claim against the special exception. That would be an absurd result, and if the statute were ambiguous we would be obliged to avoid interpreting it in a way that led to that result. *See, e.g.*, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). In any event, the plain language of RLUIPA speaks for itself, and the judiciary has no discretion to substitute different language for that of the statute. *E.g.*, *Carcieri v. Salazar*, 555 U.S. 379, 392 (2009). Accordingly, House of Prayer's RLUIPA claims must fail.

*RFRA*

[28] We next turn to House of Prayer's arguments under Indiana's RFRA. We initially note that there is no dispute that RFRA entitled House of Prayer, as a remonstrator against Milco's request for a special exception, to a fact-finding hearing on its religious-exercise claim, which was held here by the BZA. I.C. §§ 34-13-9-1, -2, -10(a).[8] Indeed, by its plain terms, Indiana's RFRA expressly permits all persons[9] in Indiana in any "judicial or administrative proceeding," other than actions based on certain claims of discrimination or claims against private employers, to assert their exercise of religion as a claim or defense

---

[8] The only published opinion in Indiana that applies our RFRA is *Tyms-Bey v. State*, in which we held that the State's authority to collect taxes due or to prosecute the failure to pay taxes due is uniquely exempt from the application of RFRA. 69 N.E.3d 488, 492 (Ind. Ct. App. 2017), *trans. denied*. As the instant appeal is not a tax case, *Tyms-Bey* is not instructive authority here.

[9] Indiana's RFRA defines "person" broadly, and that definition includes various businesses and other organizations. I.C. § 34-13-9-7. There is no dispute in this appeal that House of Prayer is a "person" under Indiana's RFRA.

against government action, regardless of whether the government is a party to the proceeding. I.C. § 34-13-9-9.

[29] Similar to RLUIPA, Indiana's RFRA prohibits "a governmental entity" from "substantially burden[ing] a person's exercise of religion, even if the burden results from a rule of general applicability." I.C. § 34-13-9-8(a). However, "[a] governmental entity may substantially burden a person's exercise of religion" when the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." I.C. § 34-13-9-8(b). That is, in order to substantially burden a person's exercise of religion, the government must show that "it lacks other means of achieving its desired goal without imposing" that burden, which requires a "focused inquiry" that "scrutinizes the asserted harm . . . to particular religious claimants." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2779-80 (2014) (discussing the federal version of RFRA); *see also* I.C. §§ 34-13-9-5, -7 (adopting the holdings of *Burwell* under Indiana's RFRA).

[30] Here, House of Prayer asserts that the grant of the special exception substantially burdens House of Prayer's exercise of religion by "imperiling the health of the children" at House of Prayer's summer camp. Appellant's Br. at 48. House of Prayer further asserts that the imposition of that burden is not in furtherance of a compelling government interest.[10] In response, the BZA asserts

---

[10] House of Prayer does not assert that the BZA was required, as a matter of law, to enter findings that specifically addressed House of Prayer's RFRA claim. Accordingly, as noted above, our review is limited to

that House of Prayer presented no evidence that its exercise of religion has been or will be substantially burdened by the grant of the special exception.

[31] We do not agree with the BZA that House of Prayer presented no evidence of a substantial burden on the exercise of its religion. House of Prayer presented expert testimony to the BZA that the construction of the proposed CAFO would harm the health of attendees at House of Prayer's summer camp through both noxious odors and waste run-off. An obvious and reasonable inference from that evidence is that fewer people would, as a consequence, attend House of Prayer's camp, which in turn would adversely affect House of Prayer's ability to provide religious guidance to those who might be interested in it. We also agree with House of Prayer that an obvious and reasonable inference from that evidence is that the ability of attendees to focus could be adversely affected.

[32] But the BZA acted as a fact finder on the evidence before it, and it did not credit House of Prayer's evidence. Rather, the BZA credited Milco's evidence with respect to mitigation efforts Milco intended to take to abate noxious odors and avoid waste run-off from Milco's property. The BZA further imposed various other mitigation requirements on Milco as a condition of granting the special exception. In other words, the BZA found, as a matter of fact, that House of Prayer would not be substantially burdened in the exercise of its religion by the grant of the special exception.

---

determining whether the BZA's decision was based upon substantial evidence. *St. Charles Tower*, 873 N.E.2d at 600 (quotation marks omitted).

[33] House of Prayer's argument to the contrary on appeal is, in its effect, a request for this Court to reweigh the evidence that was before the BZA, which we cannot do. The BZA's apparent assessment that House of Prayer will not be substantially burdened in the exercise of its religion by the grant of the special exception is supported by substantial evidence. Accordingly, we cannot say that the BZA's decision on this issue is contrary to law.

*Article 1, Sections 2 and 3 of the Indiana Constitution*

[34] Finally, House of Prayer asserts that the grant of the special exception violates its religious rights under Article 1, Sections 2 and 3 of the Indiana Constitution. In particular, House of Prayer asserts that the grant of the special exception materially burdens its constitutionally protected religious rights. "A [state constitutional] right is impermissibly alienated when the State materially burdens one of the core values which it embodies." *Price v. State*, 622 N.E.2d 954, 960 (Ind. 1993).

[35] However, having concluded that the BZA had before it substantial evidence to support its decision that House of Prayer's exercise of religion has not been and will not be substantially burdened under Indiana's RFRA, we likewise conclude that the BZA's decision will not materially burden House of Prayer's religious rights under Article 1, Sections 2 and 3 of the Indiana Constitution. Thus, House of Prayer's argument under Article 1, Sections 2 and 3 of the Indiana Constitution must fail.

## Conclusion

[36] In sum, we affirm the trial court's denial of House of Prayer's petition for judicial review.

[37] Affirmed.

Mathias, J., and Barnes, J., concur.