## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 15 2019, 7:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEY FOR APPELLEE

Joshua D. Hershberger
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Goley, et al.,

*Appellant-Intervenors,*

v.

The White Barn Venue, LLC,

*Appellee-Plaintiff,*

and

Madison City Board of Zoning Appeals,

*Appellee-Defendant.*

May 15, 2019

Court of Appeals Case No.
18A-MI-1579

Appeal from the Jefferson Circuit Court

The Honorable W. Gregory Coy, Special Judge.

Trial Court Cause No.
39C01-1805-MI-450

**Tavitas, Judge.**

## Case Summary

[1] Mark Goley, Jennifer and William Ison, Sherry and Gary Smith, Nancy and Keith Alexander, and Kathy Ayers ("Intervenors") appeal the trial court's grant of a conditional use permit to White Barn Venue, LLC ("White Barn") by the Madison City Board of Zoning Appeals ("BZA"). We affirm.

## Issues

[2] The Intervenors raise four issues.[1] We reframe the issues and address the following:

> I. Whether the BZA's decision to deny White Barn's conditional use permit was supported by substantial evidence.
>
> II. Whether the BZA's decision to deny White Barn's conditional use permit was arbitrary and capricious.

---

[1] In framing the issues, Intervenors argue that: (1) the BZA was not equitably estopped from denying the conditional use permit; (2) the BZA was not collaterally estopped from denying the conditional use permit; (3) the BZA had discretion to interpret the zoning ordinance; and (4) the BZA appropriately relied upon facts in the record in making factual determinations to deny the conditional use permit. We note that the trial court found the BZA's decision to be unsupported by substantial evidence and arbitrary and capricious. Although the trial court mentioned equitable estoppel in discussing another case, the trial court did not find that the BZA was equitably estopped; rather, the trial court found the BZA's decision was arbitrary and capricious. The trial court determined that the BZA was collaterally estopped in the context of finding that the BZA's decision was unsupported by substantial evidence. We focus our analysis on the review mandated by Indiana Code Section 36-7-4-1614(d) and also consider whether the BZA's decision was unsupported by substantial evidence or arbitrary and capricious.

## Facts

Bryan and Shelly Dews owned property located within a two-mile buffer zone of the City of Madison, Indiana. The property is located on Goins Road near the intersection with Thomas Hill Road, and it is zoned residential agriculture. The Dews Family wanted to convert the barn on the property into a rustic event building called "The White Barn Venue."

In March 2016, White Barn[2] filed an application for a conditional use permit to use the property for "[a] rustic barn venue with [an] emphasis on weddings." Appellants' App. Vol. III p. 36. White Barn estimated the cost of work to be done at $50,000.00 At the BZA hearing, however, Bryan Dews stated that they were investing nearly $300,000.00

A few neighboring property owners appeared at the BZA hearing on the application and expressed concerns about parking, traffic, noise, and alcohol consumption. The three-member BZA unanimously approved the conditional use permit on the condition that White Barn file annual renewals and cease all events by 11:00 p.m. The BZA's decision was not appealed.

---

[2] The 2016 application was filed by Bryan and Shelly Dews, and the 2018 application was filed by White Barn. For simplicity, we will refer to the Dews Family as "White Barn."

[6] White Barn renovated the barn and property and started hosting weddings in June 2017. There were seven events in 2017. Twenty-three events were scheduled for 2018, and several events were already booked for 2019.

[7] Due to a clerical error, the Madison City Plan Commission documented the permit as a two-year renewal rather than an annual renewal. White Barn did not file a renewal application in March 2017. On February 9, 2018, the Plan Commission informed White Barn that it was time to renew the conditional use permit. The Commission informed White Barn that the $35.00 renewal fee was due before March 9, 2018, for the renewal to be considered at the March 12, 2018 BZA meeting. White Barn paid the renewal fee.

[8] At the March 12th BZA meeting, some neighboring property owners appeared and opposed the renewal. Because a representative of White Barn was not at the meeting, the BZA tabled the matter.[3] The matter was considered again at the April 9, 2018 BZA meeting, but it was tabled again to allow White Barn to address the neighbors' concerns.

[9] On April 13, 2018, the BZA's attorney sent a letter requesting that White Barn "file a new Conditional Use Permit application" by April 18, 2018, to be considered at the May 14, 2018 BZA meeting. Appellants' App. Vol. III p. 42. White Barn then filed a Request for Renewal and/or Application for

---

[3] They were not required to be at the meeting.

Conditional Use Permit. White Barn contended that it should not be required to file a new application and that its application should be considered as a renewal.

[10] At the BZA hearing on May 14, 2018, consideration of the White Barn permit issue did not begin until approximately 11:30 p.m. and did not end until approximately 2:00 a.m. White Barn's representative, Mr. Dews, testified that he monitors the noise levels inside and outside of the barn with a decibel meter throughout the events. According to Mr. Dews, White Barn "took everything in[to] consideration," including tree lines to act as noise barriers, the use of indirect lighting, traffic control, parking, and controlling alcohol consumption. Appellants' App. Vol. IV p. 61. On one occasion, an event continued past 11:00 p.m., and a neighbor complained. Mr. Dews subsequently took measures to prevent such an incident from happening again, and he has not received any other complaints from the neighbors. Mr. Dews was unaware of any noise complaints reported to the County or traffic accidents related to events at the property.

[11] Several neighbors of the White Barn property attended the BZA hearing on May 14, 2018. Jennifer Ison expressed concerns regarding headlights illuminating her windows, an increase in traffic and noise, a lack of privacy, and a decrease in property values. Sherry and Gary Smith also expressed concerns regarding headlights shining in their bedroom windows, increased traffic and noise, and a decrease in property values. Nancy Alexander

expressed concerns about traffic on Thomas Hill Road because it is curvy and narrow. Kathy Ayers, Mark Goley, and Keith Alexander also expressed concerns about increased traffic on Thomas Hill Road. The five-member BZA denied White Barn's application for a new application in a 3-2 vote.[4]

[12] In May 2018, White Barn filed a verified petition for judicial review of the BZA's decision. White Barn also filed a petition to stay enforcement of the BZA's order pending the resolution of the petition for judicial review, which the trial court granted. Intervenors filed a motion to intervene.

[13] White Barn argued that the BZA's decision was arbitrary, capricious, and contrary to law because: (1) the decision was "made without consideration and in disregard for the facts and circumstances of the case;" (2) the decision "was in direct contradiction to a decision on the same issue two years previously;" and (3) the decision "was unsupported by substantial evidence." Appellants' App. Vol. V p. 207. White Barn argued that the BZA was giving other similarly-situated businesses the "privilege of operating while denying that same privilege to" White Barn. *Id.* at 209. White Barn noted procedural irregularities with the hearing because the hearing regarding its application did not start until 11:30 p.m. and ended at almost 2:00 a.m. Finally, White Barn

---

[4] Only one of the BZA members from the 2016 hearing was present at the 2018 hearing. That member voted to approve the conditional use permit in 2016 but voted to deny the permit in 2018.

argued that the BZA was collaterally estopped from denying the application because the BZA was "essentially vacat[ing] its prior decision." *Id.* at 210.

[14] After a hearing on June 14, 2018, the trial court entered an order reversing the BZA's denial of White Barn's application for a conditional use permit. The trial court found in part:

> In conclusion, the action by the City of Madison Board of Zoning Appeal in denying the Dews' Application for Conditional Use Permit in April, 2018, resulted in prejudice to the Dews as follows: the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. I.C. 36-7-4-1614(d)(1). Further, the decision was unsupported by substantial evidence. I.C. 36-7-4-1614(d)(5). The court does not find any prejudice to the Dews pursuant to the criteria set forth in I.C. 36-7-4-1614(d)(2), (3), or (4).
>
> The court further finds that the Madison City Board of Zoning Appeals should be reversed and the BZA be compelled to issue the conditional use permit for one (1) year with an effective date of April 1, 2018 through March 31, 2019. I.C. 36-7-4-1615(2). The Madison City Plan Commission should be ordered to notify the Dews in advance when their permit is about to expire; the Dews should be required to re-apply annually; and should be required to maintain the 11:00 pm. closing time for events.

Appellant's App. Vol. VI pp. 35-36. Intervenors now appeal.

## Analysis

[15] Intervenors appeal the trial court's grant of White Barn's petition for judicial review. A trial court and an appellate court both review the decision of a

zoning board with the same standard of review. *St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cty.*, 873 N.E.2d 598, 600 (Ind. 2007). "A proceeding before a trial court or an appellate court is not a trial de novo; neither court may substitute its own judgment for or reweigh the evidentiary findings of an administrative agency." *Id.* "Th[is] standard requires great deference toward the administrative board when the petition challenges findings of fact or the application of the law to the facts." *House of Prayer Ministries, Inc. v. Rush Cty. Bd. of Zoning Appeals*, 91 N.E.3d 1053, 1058 (Ind. Ct. App. 2018), *trans. denied*. "But if the allegation is that the [agency] committed an error of law, no such deference is afforded and reversal is appropriate if an error of law is demonstrated." *Id.*

[16] Indiana Code Section 36-7-4-1614(d) provides that a reviewing court:

> shall grant relief . . . only if the court determines that a person seeking judicial relief has been prejudiced by a zoning decision that is:
>
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) contrary to constitutional right, power, privilege, or immunity;
>
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

The party seeking judicial review has "[t]he burden of demonstrating the invalidity of a zoning decision." Ind. Code § 36-7-4-1614(a). The trial court here found the BZA's decision was both unsupported by substantial evidence and arbitrary and capricious. We will address both issues.

## I. Substantial Evidence

[17]     Under Indiana Code Section 36-7-4-1614(d)(5), we must review whether the BZA's decision was "unsupported by substantial evidence." "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rice v. Allen Cty. Plan Comm'n*, 852 N.E.2d 591, 597 (Ind. Ct. App. 2006), *trans. denied*. Substantial evidence requires "more than speculation and conjecture." *Id.* Evidence is substantial "if it is more than a scintilla and less than a preponderance." *Id.*

[18]     On this issue, the trial court found:

> [T]he court finds that the Board decision was not supported by substantial evidence. The Dews produced substantial evidence that the White Barn Venue complied with the nine requirements of the zoning code as it applies to Conditional Uses. Their evidence established that: (1) the venue is a conditional use; (2) will be harmonious and in accordance with the City of Madison's comprehensive plan; (3) will be designed, constructed, operated and maintained so as to be harmonious and appropriate in

appearance with the existing or intended Character of the general vicinity and that such use will not change the essential Character of the same area; (4) will not be hazardous or disturbing to existing or future neighboring uses; (5) will be served adequately by essential public facilities and services such as highways, streets, police and fire protection, drainage structures, refuse disposal, water and sewer, and schools; or that the persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such services; (6) will not create excessive additional requirements at public expense for public facilities and services and will not be detrimental to the economic welfare of the community; (7) will not involve uses, activities, processes, materials, equipment, and conditions of operation that will be detrimental to any persons, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare or odors; (8) will have vehicular approaches to the property which shall be so designed as not to create an interference with traffic on surrounding public thoroughfares; and (9) will not result in the destruction, loss, or damage of natural, scenic, or historic features of major importance. *See* sec.11.73.

Although the residents living in the area (who subsequently became the intervenors in this lawsuit) expressed concerns regarding several issues, there was no evidence to support their claims or concerns beyond the self-serving statements of the residents themselves. The residents testified as to their concerns regarding alcohol consumption at the venue, but there is no evidence that there have been any alcohol-related problems or accidents related to the White Barn. The owners obtain a proper license to serve liquor and also hire properly licensed bartenders to serve the liquor, and the guests are "cut off" if they attempt to consume too much. Board Record pp. 121-123. There is no evidence that the police have been called for any unruly behavior at the venue.

As for the noise concerns raised by the neighbors, there was no evidence that the police have ever been called to the White Barn due to excessive noise. Mr. Dews testified before the board that the DJ faces away from the road inside the barn and that he uses a decibel meter to make sure the sound does not rise above a certain level and disturb the neighbors. Mr. Dews stated that there is always staff on site to monitor the situation; there was one complaint in 2017 but they have taken steps to remedy the situation that occurred that time.

Regarding the light, the neighbors had concerns regarding the headlights of vehicles entering and leaving the White Barn venue shining into their homes at night, but no evidence that such occurred was presented. In fact the Dews presented evidence that showed that headlights would not in fact shine into the homes of the neighbors across the road.

As for the traffic complaints, there is no evidence before the board that establishes that the increase in traffic due to the events at the venue has led to any accidents. While the residents of the area have been used to (some for several years) light traffic in the area, the wedding venue brings in approximately 40-50 cars during an event. This means in 2017 there were seven (7) days when traffic on the roads was heavier, and in 2018 there would be twenty-three (23) days when the traffic will be greater. The Dews close the venue in the colder/wetter months. The complaint by Ms. Ayers regarding traffic and her guests being frightened by the number of cars they met was of no moment; she could not say whether the cars her guests met on the road were from the venue or not. Also, the area where Ms. Ayers' bed and breakfast lies on the road is only one of at least three ways to reach the venue, so not all traffic traveling to the venue will be using that portion of the road.

Finally, as to the concerns regarding property values, there was no evidence provided to the BZA by the intervenors/neighbors that their property values would decrease other than the self serving statements of the owners. Prior to the Dews coming in and cleaning up the area around the White Barn, the property was overgrown and the locals had to clear the roadside. In the 2016 minutes, Kenny Ison stated that he lives right across the road and the fence line was overgrown to the point that he had to "go out and break limbs", and that the view was obstructed. He wanted it all cleaned up. Mr. Dews stated the road was overgrown and it "looks very bad"; He called it an "eyesore", indicated that it would be bulldozed and cleaned up, and that the fence rows would be taken down. To the extent that the Dews cleaned up and improved the property to the extent they have, the inference that property values have suffered is unsupported by substantial evidence.

Substantial evidence has to be more than speculation or conjecture. *S & S Enterprises, Inc. v. Marion County Board of Zoning Appeals*, 788 N.E.2d 485, 491 (Ind. App. 2003). Here, the City of Madison Board of Zoning Appeals issued a conditional use permit in 2016 to the White Barn under two conditions. They heard the concerns of the local neighbors/landowners and decided to issue the permit anyway. In 2018, the Dews sought to have the Board issue a new conditional use permit; the board denied the application. However, the concerns raised at the 2018 meeting are the [sic] for all intents and purposes the same concerns that were raised in 2016. When the facts and circumstances which activated a decision are alleged and shown to have so changed as to vitiate or materially affect the reasons which produced and supported it, and no vested rights have intervened, it is reasonable and appropriate to the functions of the board that the subject matter be re-examined in light of the altered circumstances. *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1013-1014. It naturally follows that if the facts and

circumstances have not materially changed the review may occur but the result should be the same. The function of a board of zoning appeals is quasi-judicial. It generally has no power to review and vacate, rescind or alter its decision after it has been made. *Id.* In the *Schlehuser* case the trial court affirmed a decision by a board revoking previously issued variances. The appellate court reversed that portion of the trial court's ruling, stating that the board could certainly revoke the variances if Schlehuser failed to meet the conditions that were imposed but only if shown by evidence in a hearing.

In the case at bar, the Dews received the original conditional use permit based on two conditions only: annual renewals and conclude events by 11:00 pm. The Dews failed to meet one of the conditions, that is they failed to renew the permit within one year. To that end, their application in 2018 is considered by this court to be a new application. However, the concerns and conditions which allowed the issuance of the permit in 2016, prior to actual events beginning, were the same then as in 2018. There being no change in conditions, and the Dews having relied on the board's decision in 2016 before investing tens, if not hundreds of thousands of dollars in the venue, then the board in 2018 was bound by the 2016 decision to issue a new conditional use permit. The legality of the issuance of the permit in 2016 is of no moment; counsel for intervenors argued that there was not a sufficient quorum on all the issues/findings of fact to issue the permit in 2016; however, as agreed by all parties, no appeal was taken from that decision so it stands. Absent evidence of a change in conditions or a failure to meet the previously imposed condition of the 11:00 pm. ending, the board in 2018 was collaterally estopped from denying the petition.

Appellant's App. Vol. VI pp. 30-35.

[19] The zoning ordinance at issue here provided the following regarding conditional use permits:

> It is recognized that an increasing number of new kinds of uses are appearing daily, and that many of these and some other more conventional uses possess characteristics of such unique and special nature relative to location, design, size, method of operation, circulation, and public facilities that each specific use must be considered individually. These specific uses as they are conditionally permitted under the provisions of Article V shall follow the procedures and requirements set forth in Sections 11.71 - 11.78, inclusive. Conditional uses, while requiring special consideration by the Board of Zoning Appeals, shall be deemed permitted uses in the district in which they are provided.

Appellants' App. Vol. VI p. 5. In determining whether to grant an application for conditional use permit, the zoning ordinance required the BZA to consider several factors:[5]

---

[5] The BZA and the trial court considered White Barn's application as a new application rather than a renewal. The parties do not direct us to provisions in the Zoning Ordinance that address a party's failure to file a timely renewal of a conditional use permit, and our review does not reveal a provision of the Zoning Ordinance directly on point. Section 11.74 of the Zoning Ordinance provides:

> In granting any conditional use, the Board may prescribe appropriate conditions and safeguards in conformity with this ordinance. Violations of such conditions and safeguards, when made a part of the terms upon which the conditional use is granted, shall be deemed a violation of this ordinance and punishable under Section 11.50 of this ordinance.

Appellants' App. Vol. VI p. 127. Section 11.50 describes penalties for the violation of ordinances that include fines, infractions, and injunctive relief. Regardless, the BZA was permitted to impose conditions on the granting of a conditional use permit. Here, the BZA required annual renewals of the permit. Despite the BZA's clerical error in scheduling the permit as a bi-annual renewal, White Barn was specifically made aware that it was subject to annual renewals of the permit. Given White Barn's failure to file a timely annual renewal of the application, we agree with the trial court's determination that White Barn's application was a new application rather than a renewal.

The Board of Zoning Appeals shall review the particular facts and circumstances of each proposed use in terms of the following standards and shall find adequate evidence showing that such use at the proposed location:

1. Is in fact a conditional use as established under the provisions of Article V and appears on the Official Schedule of District Regulations adopted by Section 7.00 for the zoning district involved.

2. Will be harmonious with and in accordance with the general objectives, or with any specific objective of the City's Comprehensive Plan and/or the Zoning Ordinance.

3. Will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area.

4. Will not be hazardous or disturbing to existing or future neighboring uses.

5. Will be served adequately by essential public facilities and services such as highways, streets, police and fire protection, drainage structures, refuse disposal, water and sewer, and schools; or that the persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such services.

6. Will not create excessive additional requirements at public expense for public facilities and services and will not be detrimental to the economic welfare of the community.

7. Will not involve uses, activities, processes, materials, equipment, and conditions of operation that will be detrimental to any persons, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare, or odors.

8. Will have vehicular approaches to the property which shall be so designed as not to create an interference with traffic on surrounding public thoroughfares.

9. Will not result in the destruction, loss, or damage of natural, scenic, or historic features of major importance.

*Id.* at 5-9.

[20] During the 2016 conditional use permit application process, the BZA unanimously granted the application after considering each of the nine factors listed in the zoning ordinance. The BZA was aware at that time that the event facility would cause an increase in noise and traffic and granted the petition anyway. As the trial court noted, in reliance on the decision, White Barn "invest[ed] tens, if not hundreds of thousands of dollars" to remodel the barn and property. *Id.* at 34. During the 2018 application process, the BZA considered the same factors and circumstances and reached a different decision.[6]

---

[6] Intervenors argue that White Barn's application for a conditional use permit should have been denied because it qualified as a "Public Assembly" rather than "Other Recreation." The trial court found:

[21] In *Porter Cty. Bd. of Zoning Appeals v. Bolde*, 530 N.E.2d 1212, 1213 (Ind. Ct. App. 1988), this court noted: "[G]enerally . . . a zoning board should not indiscriminately or repeatedly reconsider a determination denying a variance absent a change of conditions or circumstances. If it were otherwise there would be no finality to such proceedings." "It is well established that res judicata applies to repeated applications for special exceptions as well as for use variances, absent a change of circumstances or conditions." *Bolde*, 530 N.E.2d at 1213. Although *Bolde* did not address a conditional use permit, the principle is equally applicable here. Absent a change of conditions or circumstances, the BZA should reach consistent determinations. *See also Marker v. Mandich*, 575 N.E.2d 656, 658-59 (Ind. Ct. App. 1991) (holding that the BZA was bound by its earlier revocation of a building permit when considering the same party's petition for a special use permit).

[22] The trial court analyzed the concerns expressed by the Intervenors and found "no evidence to support their claims or concerns beyond the self-serving statements of the residents themselves." Appellants' App. Vol. VI p. 31. Other than Intervenors' opinions, there was: (1) no evidence of alcohol-related

---

The court notes that the intervenors argue that the wedding venue and the events held therein constitute a public assembly under the zoning ordinance. This court fails to see how a wedding, where guests arrive by invitation only, constitutes a public assembly. A wedding would appear to constitute "other recreational use". *See Green v. Hancock County Board of Zoning Appeals*, 851 N.E.2d 962 (Ind. App. 2006).

Appellants' App. Vol. p. 35. We agree with the trial court's interpretation of the ordinance and its reliance on *Green*.

problems, (2) no evidence of excessive noise complaints, (3) no evidence of traffic accidents or issues, (4) no actual evidence of issues with headlights shining into houses, (5) no evidence of the amount of increased traffic on Thomas Hill Road or whether the traffic is related to White Barn, and (6) no evidence of a reduction in property values.[7] We emphasize that substantial evidence requires "more than speculation and conjecture." *Rice*, 852 N.E.2d at 597. Essentially, Intervenors presented the same concerns at the 2018 meeting that they presented at the 2016 meeting with different outcomes. The trial court opined that, "if the facts and circumstances have not materially changed the review may occur but the result should be the same." Appellants' App. Vol. VI p. 34. We agree. The trial court properly found the BZA's decision was not supported by substantial evidence.

## II. Arbitrary and Capricious

[23] The trial court also found that the BZA's decision was arbitrary and capricious. "'[A]n administrative act is arbitrary and capricious only where it is willful and unreasonable, without consideration and in disregard of the facts and circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.'" *Equicor Dev., Inc. v. Westfield-*

---

[7] Intervenors argue that White Barn had many more events planned for 2018 than it had in 2017 and that White Barn plans to build a carriage house and permanent restrooms at the event facility. The original permit did not limit the number of events that could be held at White Barn, and we do not consider this to be a change in the circumstances. We further do not consider possible future changes at the facility to be current changes in the circumstances.

*Washington Twp. Plan Comm'n*, 758 N.E.2d 34, 37 (Ind. 2001) (quoting *Dep't of Natural Res. v. Ind. Coal Council, Inc.*, 542 N.E.2d 1000, 1007 (Ind. 1989), *cert. denied*, 493 U.S. 1078, 110 S. Ct. 1130 (1990)).

[24] Specifically, the trial court found:

> In the case at bar, the Dews have expended a great deal of money to upgrade the White Barn; have already entered into contracts for the conducting of weddings in 2018 and 2019; and have previously complied with the condition that the events at the White Barn end by 11:00 p.m. To deny them a conditional use permit now is to take away their opportunity to conduct business as they had been promised in 2016. The court finds the action of the Board of Zoning Appeals in granting the conditional use permit in 2016 and then not allowing the business to continue in 2018 by denying the permit application is an arbitrary and capricious decision that would result in the Dews, who relied on the board's decision in 2016, to suffer great financial loss akin to a forfeiture. It appears to the court that even the board members themselves were aware of this issue. In the 2016 meeting, Mr. Payne stated (according to the minutes) that he did not want this "to come back on the board; these folks are spending $50,000 on improvements".

Appellants' App. Vol. VI p. 30.

[25] Intervenors make no specific argument regarding the trial court's conclusion that the BZA's decision was arbitrary and capricious. Intervenors' only brief mention of this conclusion in their argument is in the section of their brief regarding equitable estoppel. Although the trial court mentioned equitable estoppel in its discussion of *Rice v. Allen Cty. Plan Comm'n*, 852 N.E.2d 591 (Ind.

Ct. App. 2006), *trans. denied*, the trial court does not appear to have applied the doctrine of equitable estoppel in this case. Rather, the trial court found the decision arbitrary and capricious. By failing to make a specific argument regarding this conclusion, Intervenors have waived this issue. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring contentions to be supported by cogent reasoning); *K.S. v. D.S.*, 64 N.E.3d 1209, 1212 (Ind. Ct. App. 2016) ("A party waives any issue for which it fails to develop a cogent argument or support with adequate citation to authority."). Waiver notwithstanding, for the same reasons that we find the BZA's decision to be unsupported by substantial evidence, we also agree that the BZA's denial of the 2018 conditional use permit was arbitrary and capricious. Again, absent a change of conditions or circumstances, the BZA should reach consistent determinations. There was no substantial change of conditions or circumstances between the 2016 and 2018 determinations. The 2018 denial of the permit after White Barn expended substantial funds in reliance on the 2016 grant of the permit was arbitrary and capricious.[8]

---

[8] Because we conclude the trial court properly found the BZA's decision was arbitrary and capricious and was not supported by substantial evidence, we need not address the other arguments raised by Intervenors.

# Conclusion

The BZA's decision to deny the conditional use permit application by White Barn is not supported by substantial evidence and was arbitrary and capricious. We affirm the trial court's reversal of the BZA's decision.

Affirmed.

Baker, J., and May, J., concur.